**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____        :
                                                :
GARRETT KAJMOWICZ,                              :
                                                :
                    Plaintiff,                  :
                                                :
        v.                                      :        **CASE NO.  2:19-cv-00187-MRH**
                                                :
WILLIAM P. BARR,                                :
Attorney General of the United States,          :
                    *et al.*,                   :
                                                :
                    Defendants.                 :
_____        :


## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 1

LEGAL BACKGROUND ............................................................................................................ 2

FACTUAL BACKGROUND ........................................................................................................ 4

PROCEDURAL HISTORY .......................................................................................................... 5

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT .............................................................................................................................. 8

I.      PLAINTIFF LACKS STANDING TO CHALLENGE THE ALLEGED FVRA
POLICY BECAUSE HE HAS NOT IDENTIFIED AN INJURY IN FACT THAT IS
FAIRLY TRACEABLE TO DEFENDANTS' ALLEGED USE OF THE POLICY .......... 8

II.     PLAINTIFF'S CLAIM RELATING TO THE FINAL RULE FAILS FOR LACK
OF STANDING AND BECAUSE THE RULE WAS VALIDLY RATIFIED ................. 13

        A.     Attorney General Barr's Ratification of the Final Rule Cured Any Asserted
Theoretical Defect in Acting Attorney General Whitaker's Authority ....................... 13

        B.     The Declaratory Relief Plaintiff Seeks Would Do Nothing to Redress His
Alleged Injury and Amounts to an Impermissible Advisory Opinion ........................ 15

III.    WHITAKER'S DESIGNATION WAS LAWFUL ...................................................... 18

        A.     The FVRA Authorized Whitaker's Designation ............................................. 18

               1.     The FVRA's plain text applies to the Attorney General's vacancy ................ 18

               2.     The President's authority under the FVRA is not displaced by 28
U.S.C. § 508 .............................................................................................. 19

        B.     The President's Selection of Whitaker Under the FVRA Does Not Violate
the Appointments Clause. .......................................................................... 23

               1.     The Appointments Clause does not confine the President to
choosing Senate-confirmed officers or first assistants to serve as
acting agency heads ................................................................................... 25

               2.     The Appointments Clause does not prohibit the President from
directing senior federal employees to serve as acting agency heads ............... 28

CONCLUSION .......................................................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**

*Advanced Disposal Servs. E., Inc. v. NLRB,*
  820 F.3d 592 (3d Cir. 2016) ............................................................................... 14, 17

*Alden v. Maine,*
  527 U.S. 706 (1999) .................................................................................................25

*Armstrong v. Exceptional Child Center, Inc.,*
  135 S. Ct. 1378 (2015) .............................................................................................12

*Armstrong World Indus., Inc. ex rel. Wolfson v. Adams,*
  961 F.2d 405 (3d Cir. 1992) ....................................................................................16

*Ashcroft v. Mattis,*
  431 U.S. 171 (1977) .................................................................................................16

*Auffmordt v. Hedden,*
  137 U.S. 310 (1890) .................................................................................................24

*Ballentine v. United States,*
  486 F.3d 806 (3d Cir. 2007) ......................................................................................7

*Basile v. Westmoreland Cty.,*
  No. 2:12-cv-01847, 2013 WL 3147316 (W.D. Pa. June 19, 2013) .......................7

*Buckley v. Valeo,*
  424 U.S. 1 (1976) .......................................................................................................2

*CFPB v. Gordon,*
  819 F.3d 1179 (9th Cir. 2016), *cert denied*, 137 S. Ct. 2291 (2017) .......................14

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ...................................................................................................10

*City of New York v. U.S. Dep't of Def.,*
  913 F.3d 423 (4th Cir. 2019) ...................................................................................13

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................................ 9, 10

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ...................................................................................................9

*Davis v. Fed. Election Comm'n,*
  554 U.S. 724 (2008) .............................................................................................. 8, 9

*Davis v. Webster*,
No. 1:17-CV-00273, 2018 WL 1157990 (W.D. Pa. Mar. 2, 2018),
*appeal dismissed*, No. 18-1728, 2018 WL 4790049 (3d Cir. May 3, 2018) ................................................. 7

*Deaf Smith Cty. Grain Processors, Inc. v. Glickman*,
162 F.3d 1206 (D.C. Cir. 1998) ................................................................................. 16

*Dearth v. Holder*,
641 F.3d 499 (D.C. Cir. 2011) ................................................................................... 9

*Discover Bank v. Vaden*,
396 F.3d 366 (4th Cir. 2005) .................................................................................... 10

*Doolin Sec. Sav. Bank, FSP v. Office of Thrift Supervision*,
139 F.3d 203 (D.C. Cir. 1998) ................................................................................. 14

*Edmond v. United States*,
520 U.S. 651 (1997) ................................................................................................ 28

*English v. Trump*,
279 F. Supp. 3d 307 (2018) ..................................................................................... 21

*Fed. Election Comm'n v. Logi-Tech, Inc.*,
75 F.3d 704 (D.C. Cir. 1996) ................................................................................... 17

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
463 U.S. 1 (1983) ................................................................................................... 10

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ................................................................................................ 12

*Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999) ................................................................................................ 12

*Guedes v. ATF*,
356 F. Supp. 3d 109 (D.D.C. 2019) ................................................................. *passim*

*Guedes v. ATF*,
920 F.3d 1 (D.C. Cir. 2019) ............................................................................ *passim*

*Hewitt v. Helms*,
482 U.S. 755 (1987) ................................................................................................ 16

*Hooks v. Kitsap Tenant Support Servs.*,
816 F.3d 550 (9th Cir. 2016) ................................................................................... 21

*In re Asbury Dickins*,
34 Cong., 1st Sess. Rep. C.C. 9 (Cl. 1856) .............................................................. 26

*In re Cornelius Boyle,*
  34 Cong. Rep. C.C. 44 (1857) ........................................................................ 26, 28

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
  678 F.3d 235 (3d Cir. 2012) ..................................................................................... 7

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
  796 F.3d 111 (D.C. Cir. 2015) ............................................................................... 14

*Int'l Coal. for Religious Freedom v. Maryland,*
  3 F. App'x 46 (4th Cir. 2001) ................................................................................ 16

*Int'l Refugee Assistance Project v. Trump,*
  857 F.3d 554 (4th Cir. 2017), *vacated & remanded*, 138 S. Ct. 353 (2017) ........................................... 12

*Lewis v. Casey,*
  518 U.S. 343 (1996) ............................................................................................... 8, 9

*Lucia v. SEC,*
  138 S. Ct. 2044 (2018) .......................................................................................... 2, 29

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ........................................................................................ 8, 9, 15

*Maryland v. United States,*
  360 F. Supp. 3d 288 (D. Md. 2019) ........................................................................ 6

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................................................... 10

*Mississippi v. Johnson,*
  71 U.S. 475 (1866) ................................................................................................. 12

*Morrison v. Olson,*
  487 U.S. 654 (1988) .......................................................................................... 24, 28

*Newdow v. Roberts,*
  603 F.3d 1002 (D.C. Cir. 2010) ............................................................................. 12

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982) ............................................................................................... 12

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014) .......................................................................................... 23, 24

*NLRB v. SW Gen., Inc.,*
  137 S. Ct. 929 (2017) ..................................................................................3, 18, 25, 29

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ....................................................................................................13

*Raines v. Byrd*,
    521 U.S. 811 (1997) ..................................................................................................8

*Seven Words LLC v. Network Sols.*,
    260 F.3d 1089 (9th Cir. 2001) ..............................................................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ..............................................9

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ............................................................................................ 8, 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    301 F. Supp. 3d 50 (D.D.C. 2018) ........................................................................17

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998) ............................................................................................ 9, 10

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ..............................................................................12

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
    330 U.S. 75 (1947) ..................................................................................................16

*United States v. Eaton*,
    169 U.S. 331 (1898) ..................................................................................24, 27, 28

*United States v. Germaine*,
    99 U.S. 508 (1878) ..................................................................................................29

*United States v. Peters*,
    6:17-CR-55-REW-HAI-2, 2018 WL 6313534 (E.D. Ky. Dec. 3, 2018)...........18

*United States v. Santos-Caporal*,
    No. 1:18-CR-171-AGF, 2019 WL 468795 (E.D. Mo. Jan. 9, 2019),
    *adopting report & recommendation*, 2019 WL 460563 (E.D. Mo. Feb. 6, 2019) ....................................18

*United States v. Smith*,
    No. 1:18-CR-0015-MR-WCM, 2018 WL 6834712 (W.D.N.C. Dec. 28, 2018)................18

*United States v. Valencia*,
    No. 5:17-CR-882-DAE(1)(2), 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018) ................18

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ..................................................................................................9

*Virginians Against a Corrupt Congress v. Moran*,
805 F. Supp. 75 (D.D.C. 1992) .................................................................. 16

*Weiss v. United States*,
510 U.S. 163 (1994) .................................................................................... 29

*Wilkes-Barre Hosp. Co., LLC v. NLRB*,
857 F.3d 364 (D.C. Cir. 2017) ............................................................. 14, 15

*Wisconsin v. Torinus*,
49 N.W. 259 (Minn. 1879) .......................................................................... 17

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ................................................................................ 13

## STATUTES

5 U.S.C. § 101 ............................................................................................... 18

5 U.S.C. § 105 ............................................................................................... 18

5 U.S.C. § 551 ............................................................................................... 13

5 U.S.C. § 702 ........................................................................................ 13, 16

5 U.S.C. § 3345 ...................................................................................... *passim*

5 U.S.C. § 3347 ........................................................................... 4, 20, 21, 23

5 U.S.C. § 3347 (1994) ............................................................................ 3, 19

5 U.S.C. § 3348 .................................................................................. 4, 19, 21

5 U.S.C. § 3349c ............................................................................... 4, 19, 21

12 U.S.C. § 4512 ........................................................................................... 24

12 U.S.C. § 5491 ........................................................................................... 24

18 U.S.C. § 922 ............................................................................................... 4

20 U.S.C. § 3412 ........................................................................................... 24

22 U.S.C. § 2651a ......................................................................................... 19

28 U.S.C. § 508 ..................................................................................... *passim*

29 U.S.C. § 552 ............................................................................................. 19

31 U.S.C. § 502 ............................................................................................. 24

38 U.S.C. § 304 .............................................................................................24

40 U.S.C. § 302 .............................................................................................24

42 U.S.C. § 7132 ...........................................................................................24

49 U.S.C. § 102 .............................................................................................24

50 U.S.C. § 3037 ...........................................................................................24

Act of May 8, 1792, 1 Stat. 279 ..........................................................24, 29

Act of Feb. 13, 1795, 1 Stat. 415 .......................................................24, 29

Act of July 23, 1868, 15 Stat. 168 .......................................................3, 24

Rev. Stat. § 179 (1st ed. 1875) .....................................................................3

Rev. Stat. § 179 (2d ed. 1878) ......................................................................3

## CONSITUTION

U.S. Const. art. II, § 2 ...............................................................3, 28, 29

## RULES

Fed. R. Civ. P. 12 ...........................................................................................7

Fed. R. Civ. P. 25 ...........................................................................................6

## REGULATIONS

28 C.F.R. § 0.25 ...........................................................................................11

Bump-Stock-Type Devices,
    83 Fed. Reg. 66514 (Dec. 26, 2018)..............................................1, 4, 5

Bump-Stock-Type Devices,
    84 Fed. Reg. 9239 (Mar. 14, 2019) .................................................5, 13

Providing an Order of Succession Within the Department of Defense,
    Exec. Order No. 13,5333, 75 Fed. Reg. 10163 (Mar. 1, 2010) ..............22

## OTHER AUTHORITIES

*Authority of the President to Name an Acting Attorney General,*
    31 Op. O.L.C. 208 (2007) ................................................................22, 23

*Biographical Directory of the American Congress, 1774-1971* (1971) ...................27

*Designation of Acting Director of the Office of Management and Budget*,
    27 Op. O.L.C. 121 (2003) ................................................................................ 23, 30

Floyd R. Mechem, Law of Agency § 535 (1914) ...............................................................17

Mem. from Steven A. Engel, Asst. Att'y Gen., to Emmett T. Flood, Counsel to President,
    *Designation an Acting Attorney General* (Nov. 14, 2018)...........................................23, 24, 27

S. Rep. No. 105-250 (1998) ................................................................................................21

# **INTRODUCTION**

This case is the latest in a series of flawed attempts to manufacture a dispute to challenge the former designation of Acting Attorney General Matthew Whitaker under the Federal Vacancies Reform Act ("FVRA"). Plaintiff, a former possessor of a "bump stock," had initially filed this lawsuit to challenge a Final Rule issued by Whitaker on December 26, 2018, which amended the regulatory definition of "machinegun" in the National Firearms Act to ensure that bump stocks are not used to circumvent the prohibition of the manufacture and sale of new machine guns to the public. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018) ("Rule" or "Final Rule"). However, on March 11, 2019, Attorney General William P. Barr, who was appointed with the Senate's consent as Attorney General on February 15, 2019, ratified the Rule.

Recognizing the ratification blocks his avenue to challenging the Rule, Plaintiff no longer argues that the Rule is invalid and does not seek to enjoin it. Instead, he has created from whole cloth two contrived theories by which he believes he can still challenge Whitaker's designation, even though Whitaker is no longer in office and has taken no action that is causing any actual or imminent harm to Plaintiff. First, Plaintiff alleges the existence of a "policy" of using the President's authority under the FVRA to designate senior employees like Whitaker as acting principal officers, and seeks broad injunctive and declaratory relief against the use of that policy. Second, Plaintiff alleges that he was injured between the Rule's allegedly invalid issuance and its concededly valid ratification and argues that this past injury entitles him to a declaration that Whitaker was invalidly designated.

Plaintiff's fabricated theories fall apart at the seams. His challenge to an imagined FVRA policy fails because the Second Amended Complaint has not identified any injury stemming from the alleged policy itself, sufficient to satisfy Article III's case-or-controversy requirement. Even if it had, Plaintiff's injury would not be fairly traceable to Defendants' conduct, as the President alone has the exclusive authority to designate acting agency heads under the FVRA. But Plaintiff has not and, in

1

fact, could not have sued the President, as this Court lacks jurisdiction to issue injunctive or declaratory relief binding the President in the exercise of his statutory authority under the FVRA. Moreover, his challenge to the Final Rule is meritless, both because the Rule was ratified by Attorney General Barr, thereby validating it as of the time it was issued regardless of whether Whitaker had authority to promulgate it, and because the declaratory relief Plaintiff seeks is an advisory opinion that would not redress any alleged injury, including the divestment of his bump stock. Finally, though the Court should not reach the issue of Whitaker's authority, the President's designation of Whitaker to serve as Acting Attorney General was expressly authorized by the FVRA, and was not foreclosed by the Attorney General succession statute. The designation also was consistent with the Appointments Clause's text and history as reflected in the established precedent of all three branches of government.

A substantially similar, if not identical, challenge to Whitaker's authority by Plaintiff's counsel was rejected by the U.S. District Court for the District of Columbia, *Guedes v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019) and by the D.C. Circuit, *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019). And despite several other attempts to manufacture a challenge to Whitaker's designation in district courts, the Supreme Court, and even the U.S. Foreign Intelligence Surveillance Court, none of the other similar challenges by Plaintiff's counsel have been successful. This Court should follow suit and dismiss the Second Amended Complaint for lack of jurisdiction or, alternatively, for failure to state a claim.

## **LEGAL BACKGROUND**

The Appointments Clause of the U.S. Constitution prescribes the method of appointment for all "Officers of the United States" whose appointments are not otherwise provided for in the Constitution. *See Buckley v. Valeo*, 424 U.S. 1, 125-26, 132 (1976) (per curiam). "Officers" are those persons who hold a "continuing and permanent" federal position and exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citation omitted). The President, with the advice and consent of the Senate, nominates principal officers.

Congress may vest the power to select "inferior Officers," however, "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Neither the Appointments Clause nor any other provision of the Constitution expressly addresses whether and in what circumstances an individual may serve temporarily in an acting capacity for a principal officer.

Since 1792, Congress has provided for the designation of non-confirmed persons to serve temporarily as acting principal officers. *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017). In 1868, Congress enacted the Vacancies Act, which set a default rule that in the case of a vacancy "of the head of any executive department of the government, the first or sole assistant thereof shall . . . perform the duties of such head." Act of July 23, 1868, ch. 227 § 1, 15 Stat. 168 (1868). The Act also authorized the President to bypass the "first assistant" and designate a different official. *See id.*

Congress also has enacted myriad agency-specific vacancy statutes, including 28 U.S.C. § 508(a). Section 508(a) provides that in the case of vacancy in the office of Attorney General, "the Deputy Attorney General may exercise all the duties of that office," and for the purpose of the Vacancies Act—and now the FVRA—the Deputy Attorney General is the first assistant to the Attorney General. If both offices are vacant, "the Associate Attorney General shall act as the Attorney General," and "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General." *Id.* § 508(b). Notably, the President's authority under the Vacancies Act to bypass the statute's default rule was expressly made inapplicable "to a vacancy in the office of Attorney General." 5 U.S.C. § 3347 (1994); *see* Rev. Stat. § 179 (1st ed. 1875); Rev. Stat. § 179 (2d ed. 1878).

In 1998, Congress enacted the FVRA, 5 U.S.C. §§ 3345-3349d, to replace the Vacancies Act. The FVRA provides three options for designating an acting official to perform the duties of a vacant office that is subject to Senate confirmation. First, absent any presidential designation, the "first assistant" to the vacant office shall perform its functions and duties." *Id.* § 3345(a)(1). Second, the

President may depart from that default course by designating another Senate-confirmed official. *Id.* § 3345(a)(2). And third, the President may designate an officer or employee within the same agency to perform the vacant office's functions and duties, provided that he or she has been in the agency for at least 90 days in the 365 days preceding the vacancy, in a position for which the rate of pay is equal to or greater than the minimum rate for GS-15 of the General Schedule. *Id.* § 3345(a)(3). This third option is available even where the vacant office is the agency head. *Cf. id.* § 3348(b)(2).

The FVRA also explains how it intersects with office-specific vacancy statutes. The FVRA provides that it is the "exclusive means for temporarily authorizing an acting official," unless a "statutory provision expressly . . . authorizes" the President, a court, or the head of a Department to designate an acting official or "designate[s] an officer or employee" to serve as the acting official. *Id.* § 3347(a)(1). The FVRA further identifies specific offices to which the statute "shall not apply." *Id.* § 3349c. Unlike the Vacancies Act, the FVRA does not contain any provision explicitly making the President's authority under the FVRA inapplicable to the office of Attorney General.

## FACTUAL BACKGROUND

On October 1, 2017, rifles with attached "bump stocks"—firearms attachments that permit semi-automatic rifles to function as machine guns—were used in a horrific crime in Las Vegas, Nevada, in which hundreds of rounds of ammunition were rapidly fired at a large crowd attending an outdoor concert, killing 58 people and wounding approximately 500. After the attack, on instruction from the President, the Department of Justice issued a notice of proposed rulemaking to amend the regulatory definition of "machinegun" to ensure that bump stocks are not used to circumvent 18 U.S.C. § 922(o), the statute prohibiting the manufacture and sale of new machine guns to the public. The resulting Rule was announced on December 18, 2018, by then-Acting Attorney General Matthew Whitaker and published on December 26, 2018. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514. The Rule clarifies that bump stocks are machine guns subject to § 922(o) and instructs "current possessors"

of bump stocks "to undertake destruction of the devices" or to "abandon [them] at the nearest ATF office" by the Rule's effective date. *Id.* at 66530. The Rule specified that it would go into effect on March 26, 2019. *Id.* at 66514.

Matthew Whitaker was expressly designated by the President, pursuant to the FVRA, as Acting Attorney General after the resignation of Attorney General Jefferson B. Sessions III on November 7, 2018. Whitaker served as Acting Attorney General until William P. Barr was appointed with the Senate's consent on February 15, 2019. On March 11, 2019, Attorney General Barr ratified the Rule after "familiariz[ing] [him]self with the rulemaking record" and "reevaluat[ing] those materials without any deference" to the prior decision. *See Bump-Stock-Type Devices*, 84 Fed. Reg. 9239 (Mar. 14, 2019).

## PROCEDURAL HISTORY

This case is one in a constellation of cases brought by Plaintiff's counsel to contest the statutory and constitutional validity of Whitaker's designation via a challenge to the Final Rule. The progenitor was *Firearms Policy Coalition v. Barr*, No. 1:18-cv-3083 (D.D.C.), in which the plaintiff, Firearms Policy Coalition ("FPC"), represented by Plaintiff's counsel here, argued that (i) Whitaker's designation violated the FVRA because it conflicted with the Attorney-General vacancy statute, 28 U.S.C. § 508, and (ii) that, if upheld under the FVRA, the designation would violate the Appointments Clause because Whitaker was not the "first assistant" to the Attorney General and because, as chief of staff, he was a senior federal employee and not an officer. That case was subsequently consolidated with two other actions in the lead case *Guedes v. ATF*, No. 1:18-cv-2988 (D.D.C.), where the various plaintiffs moved to preliminarily enjoin the Final Rule. The district court denied the motions, holding, in relevant part, that Whitaker's designation was lawful both under the FVRA and the Appointments Clause. *See Guedes*, 356 F. Supp. 3d at 137-55.

Plaintiffs appealed to the D.C. Circuit, and while the appeal was pending, Attorney General Barr ratified the Rule. The D.C. Circuit affirmed the denial of the preliminary injunction, holding that

the ratification cured any alleged defect in Whitaker's authority as Acting Attorney General, thereby obviating the need to address the validity of Whitaker's designation. *See Guedes*, 920 F.3d at 12-13.[1]

Plaintiff commenced this action on February 21, 2019, while the proceedings in *Guedes* were pending before the district court, raising the same arguments that FPC did in *Guedes*. On February 20 and 21, three other plaintiffs, also represented by Plaintiff's counsel, filed identical complaints in two additional actions. Compl., *Koster v. Barr*, No. 2:19-cv-1173 (D. Ariz. Feb. 20, 2019), ECF No. 1; Compl., *Patrick v. Barr*, No. 5:19-cv-0052 (E.D.N.C. Feb. 21, 2019), ECF No. 1. Plaintiff filed a motion for preliminary injunction (ECF No. 5) and moved for expedited briefing, but then requested that the motion be held in abeyance pending the decision of the D.C. Circuit in the *Guedes* appeal. (ECF No. 20.) After the D.C. Circuit's decision was issued, Plaintiff withdrew his motion for a preliminary injunction and amended his Complaint. (ECF Nos. 38, 43.)[2]

In the Second Amended Complaint, Plaintiff now asserts two variations on his prior theme. First, despite his prior belief that Whitaker's designation was "unprecedented," Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 21, ECF No. 5-1, Plaintiff now seeks injunctive and declaratory relief against an alleged "explicit executive policy of using the FVRA to designate an employee like Mr. Whitaker as any officer, including a principal officer, and even when the principal officer's first assistant is available to serve and an office-specific designation statute automatically designated the first assistant

---

[1] Although FPC withdrew its appeal, one of the plaintiffs in the action "presse[d] the same challenge to Whitaker's authority to promulgate the Rule" as FPC and incorporated *all* of FPC's arguments by reference. *Guedes*, 920 F.3d at 10. Thus, the D.C. Circuit addressed and rejected FPC's arguments.

[2] Plaintiff's counsel has also sought to challenge Whitaker's designation through other vehicles, including Fed. R. Civ. P. 25(d)'s automatic substitution provision for public officers, the obscure writ of quo warranto, objections to the conduct of unrelated litigation by the Department of Justice, and a request to be appointed *amicus curiae* to the Foreign Intelligence Surveillance Court. *See Maryland v. United States*, 360 F. Supp. 3d 288, 317-20 (D. Md. 2019); Mot. to Substitute, *Michaels v. Whitaker*, No. 18-496 (U.S. Nov. 16, 2018); Compl., *Michaels v. Barr*, No. 1:18-cv-02906-RDM (D.D.C. Dec. 11, 2016); *In re Appointment of Thomas C. Goldstein as* Amicus Curiae *Pursuant to 50 U.S.C. § 1803(i)(2)(B)* (U.S. Foreign Int. Surveillance Court, D.C.) (Dec. 7, 2018). None of these challenges were successful, including in some cases because counsel withdrew his requests for relief after expedited briefing.

to act" as the acting principal officer. Second Am. Compl. ("SAC") ¶ 13, ECF No. 43. Second, although Plaintiff does not allege that the Rule is now invalid, he seeks a declaration that it was invalid for a short period in the past—between its issuance and its ratification—due to Whitaker's allegedly improper designation. *Id.* at 9-10 (request for relief). Plaintiff seeks a broad declaration that, among other things, declares that Whitaker lacked statutory and constitutional authority to issue the Final Rule and that the Final Rule was invalid between December 26, 2018 and March 11, 2019. *Id.*

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Defendants here make a facial challenge to jurisdiction, as, even assuming the allegations in the Amended Complaint were true, they would be insufficient to establish Article III standing for Plaintiff's claims.

In addition, under Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege 'enough facts to state a claim for relief that is plausible on its face.'" *Basile v. Westmoreland Cty.*, No. 2:12-cv-01847, 2013 WL 3147316, at *1 (W.D. Pa. June 19, 2013) (Hornak, J.) (citation omitted). "When reviewing a Rule 12(b)(6) motion, the Court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Davis v. Webster*, No. 1:17-CV-00273, 2018 WL 1157990, at *1 (W.D. Pa. Mar. 2, 2018) (Hornak, J.), *appeal dismissed*, No. 18-1728, 2018 WL 4790049 (3d Cir. May 3, 2018).

**ARGUMENT**

I.  **PLAINTIFF LACKS STANDING TO CHALLENGE THE ALLEGED FVRA POLICY BECAUSE HE HAS NOT IDENTIFIED AN INJURY IN FACT THAT IS FAIRLY TRACEABLE TO DEFENDANTS' ALLEGED USE OF THE POLICY.**

Plaintiff alleges that the "government" has a "policy" of using the FVRA "to designate a non-Senate confirmed officer . . . to act as a principal officer during an absence or vacancy when that officer's 'first assistant' is available to serve" and "an office-specific designation statute automatically designate[s] the first assistant to act during the absence or vacancy." SAC ¶¶ 1, 13. Plaintiff's challenge to an imagined policy should be dismissed because Plaintiff lacks standing. He has not identified any concrete injury arising from the alleged policy. And, even if he had, such an injury would not be fairly traceable to any conduct by Defendants, as the only person who can adopt and implement a "policy" concerning the designation of acting agency heads pursuant to the FVRA is the President and federal courts lack jurisdiction to enter relief that binds the President in the performance of his official duties.

A core element of Article III's case-or-controversy requirement is that a plaintiff must establish his or her standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. Plaintiff must demonstrate he is suffering an (1) "an injury in fact," (2) causally connected to the "alleged conduct of the defendant," and (3) "likely" to "be remedied by the relief plaintiff seeks." *Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (citing *Lujan*, 504 U.S. at 560-61).

As a threshold matter, Plaintiff cannot rely on any purported injury from the issuance of the Final Rule to support his abstract challenge to an alleged FVRA policy. That is because "standing is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*,

518 U.S. 343, 358, n.6 (1996)).  "Rather, 'a plaintiff must demonstrate standing for each claim he seeks

to press' and 'for each form of relief' that is sought.'"  *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547

U.S. 332, 352 (2006)).

Here, Plaintiff fails to allege well-pleaded facts showing that, separate from the Final Rule, he

is suffering any current or imminent injury traceable to the alleged FVRA policy.  Injury in fact is "the

'[f]irst and foremost' of standing's three elements."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

(quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)), *as revised* (May 24, 2016).  "To

establish injury in fact, a plaintiff must show . . . 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548

(quoting *Lujan*, 504 U.S. at 560).  Adherence to those requirements "tends to assure that the legal

questions presented to the court will be resolved, not in the rarified atmosphere of a debating society,

but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial

action," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472

(1982), and "serves to prevent the judicial process from being used to usurp the powers of the political

branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

"[P]ast injuries alone are insufficient to establish standing" for declaratory and injunctive relief.

*Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  A plaintiff "must show he is suffering an ongoing

injury or faces an immediate threat of injury."  *Id.*  In the case of a "threatened injury" the plaintiff

must allege plausibly that the injury is "*certainly impending*" for it "to constitute injury in fact," and

cannot rely solely on "[a]llegations of *possible* future injury" to establish his standing to sue.  *Clapper*,

568 U.S. at 409 (citation omitted).

Because Plaintiff seeks declaratory and injunctive relief against a supposed executive FVRA

policy, he is required to allege facts showing that he is suffering either an ongoing harm or a certainly

impending injury from the alleged policy itself.  No such facts are alleged.  Plaintiff cannot plausibly

allege that the President will in the future designate an acting agency head in the manner in which Plaintiff thinks is unlawful *and* that such hypothetical designee will take a concrete action that will injure Plaintiff in a personal and individual way. Indeed, Plaintiff nowhere ties his abstract concerns about the legality of the alleged policy to any concrete effect it will have on *him*. And even if he proffered such allegations—and he does not—they would be far too speculative to confer standing. *See, e.g.*, *Clapper*, 568 U.S. at 410-14; *City of Los Angeles v. Lyons*, 461 U.S. 95, 106-09 (1983).

Plaintiff cannot seek declaratory relief either. Declaratory judgments require demonstrating "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). This typically means that one of the parties to the action must have been able to bring a coercive action for nondeclaratory relief about the same issue against the other party. *See, e.g.*, *id.* at 128-29; *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983); *see also Discover Bank v. Vaden*, 396 F.3d 366, 371 (4th Cir. 2005) (Declaratory Judgment Act authorizes "a party which traditionally would be a defendant . . . [to] bring a preemptive suit in federal court, thus accelerating the claim against it"). It is plain here that neither party could do so. The alleged existence of an FVRA policy could not sustain a freestanding claim for damages or injunctive relief absent an agency action taken by an official designated pursuant to that policy. Nor could Defendants have brought or threatened an enforcement action based on the alleged policy.

Standing further requires that Plaintiff establish a causal connection "between the alleged injury in fact and the alleged conduct of the defendant." *Sprint Comm'cns*, 554 U.S. at 273; *see also Steel Co.*, 523 U.S. at 103. Even if Plaintiff could satisfy the injury-in-fact requirement with respect to his alleged FVRA policy claim—which he cannot—the Second Amended Complaint also fails to draw a causal nexus between any alleged injury and any challenged conduct *by Defendants*. Although Plaintiff does not define who in the "government" has supposedly adopted and implemented this alleged

executive FVRA policy, *see* SAC ¶¶ 1, 13, there are no allegations that Defendants have taken any concrete action at all to "designate a non-Senate confirmed officer . . . to act as a principal officer" pursuant to the alleged FVRA policy, *id.* ¶ 1. Nor could there be because, under the FVRA, the authority to "designate" the acting official does not belong to the "government," *id.* ¶¶ 1, 13, but to "the President (and only the President)," 5 U.S.C. § 3345(a)(3).

It follows that only the President, and not Defendants, could adopt and implement the supposed executive policy described by Plaintiff. Yet, Plaintiff fails to allege facts demonstrating the existence of a policy by the President to designate acting agency heads in a manner that Plaintiff considers unlawful; rather, he has only pointed to a single FVRA designation—Whitaker's.[3] And Plaintiff has not even attempted to sue the only person (*i.e.*, the President) who, under the FVRA, has the authority to adopt and implement this supposed policy.

Nor could he. Since "the President (and only the President)" has authority to designate acting agency heads under the FVRA, 5 U.S.C. § 3345(a)(3), Plaintiff's requested relief against the alleged policy necessarily would implicate and restrict the President's authority, *see* SAC ¶ 1 (requesting declaratory and injunctive relief to prevent the "government[ ]" from "using the FVRA to designate"

---

[3] Plaintiff also points to the fact that, since 2003, the Office of Legal Counsel ("OLC") has recognized the President's authority under §§ 3345(a)(2)-(3) to designate individuals that are otherwise not identified in an agency's statutory line of succession. *See* SAC ¶ 14 (citing 27 Op. OLC 121 (2003) & 42 Op. OLC __ (Nov. 14, 2018)). But OLC's role is to "render[ ] informal opinions and legal advice to the various agencies of the Government," 28 C.F.R. § 0.25(a), and OLC's proffered advice on the scope of the President's FVRA authority does not give rise to an actual "executive policy" unfailingly relied upon by the President to fill all vacancies of department heads. Unsurprisingly, Plaintiff only identifies Whitaker's designation as a recent example of the President's reliance on § 3345(a)(3) to designate an acting agency head. In reality, individuals designated as acting principal officers in this administration have typically been first assistants to the vacant position (*e.g.*, Deputy Secretary of State John Sullivan, Deputy Secretary of the Interior David Bernhardt, Deputy Secretary of Defense Patrick Shanahan), or other Senate-confirmed officials (*e.g.*, designation of Under Secretary of Defense Robert Wilkie as Acting Secretary of Veterans Affairs, designation of Director of the Office of Management and Budget Mick Mulvaney as Acting Director of the Consumer Financial Protection Bureau).

non-Senate confirmed officers or senior employees like Whitaker in lieu of first assistants as acting principal officers), and thus bind the President in the exercise of his official statutory authority.  It is well established that federal courts lack jurisdiction to "enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) ("[I]njunctive relief against the President himself is extraordinary, and should . . . raise[ ] judicial eyebrows.").[4]  Indeed, "[o]ut of respect for the separation of powers and the unique constitutional position of the President," the Supreme Court has squarely held that "an express statement by Congress" is required before a general cause of actions is construed to extend specifically to the President.  *Franklin*, 505 U.S. at 800-01 (President's actions are not subject to review under the Administrative Procedure Act); *Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982) ("President is absolutely immune from civil damages liability for his official acts in the absence of explicit affirmative action by Congress.").  To be sure, there is no express cause of action here that authorizes the requested relief against the President's performance of his statutory duties under the FVRA.

Moreover, Plaintiff cannot invoke the Court's equitable jurisdiction under *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) to seek the requested relief.  *Armstrong* emphasized that implied equitable claims were available only in "some circumstances" in a "proper case," *id.*, and at a minimum, that requires the requested relief to have been of the type that "was traditionally accorded by courts of equity." *Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).  The Supreme Court has cautioned courts that separation-of-powers

---

[4] *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) ("In light of the Supreme Court's clear warning that such relief should be ordered only in the rarest of circumstances we find that the district court erred in issuing an injunction against the President himself."), *vacated and remanded*, 138 S. Ct. 353 (2017); *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief . . . .") (internal citation omitted); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) ("[t]he reasons why courts should be hesitant to grant such relief are painfully obvious" given President's unique constitutional role and potential tension with separation of powers).

concerns militate against expanding the courts' "traditional equitable powers" by inferring causes of action against federal officials. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). As discussed above, there is no tradition of equitable relief against the President. To the contrary, separation-of-powers concerns require a clear statement before any general cause of action can be extended to the President. Accordingly, the Court's equitable powers under *Armstrong* do not provide any solace to Plaintiff.[5]

## II. PLAINTIFF'S CLAIM RELATING TO THE FINAL RULE FAILS FOR LACK OF STANDING AND BECAUSE THE RULE WAS VALIDLY RATIFIED.

On March 11, 2019, Attorney General Barr formally ratified the Final Rule, *see* 84 Fed. Reg. at 9240, providing sufficient authority for the Rule's issuance, regardless of the lawfulness of Whitaker's designation. Plaintiff does not contest the validity of the ratification and instead argues only that he was injured between the time the Rule was issued by Whitaker and the time it was ratified by Attorney General Barr—*i.e.*, before the Rule went into effect—because the issuance of the Rule impaired his ability to sell his bump stocks. SAC ¶ 15. But the declaratory relief Plaintiff seeks will not redress that alleged injury and thus is an improper attempt to obtain an advisory opinion. And regardless, the ratification cured any alleged defect in Whitaker's authority at the time he issued the Rule.

### A. Attorney General Barr's Ratification of the Final Rule Cured Any Asserted Theoretical Defect in Acting Attorney General Whitaker's Authority.

The Final Rule was validly issued by former Acting Attorney General Whitaker because, as discussed *infra*, his designation did not violate the FVRA or the Appointments Clause. *See infra* Pt. III.

---

[5] Perhaps recognizing that Plaintiff cannot sue the President to obtain the relief requested against the alleged policy, the Second Amended Complaint identifies the "United States of America" as a co-defendant. But Plaintiff cannot circumvent essential limitations grounded on the principle of separation of powers and seek relief that directly binds the President's statutory authority by simply naming the United States as a party. Indeed, there is no waiver of sovereign immunity with respect to Plaintiff's policy claim because the alleged "policy" does not meet the well-established definition of "agency action" for purposes of 5 U.S.C. § 702. *See* 5 U.S.C. § 551(13); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("agency action" is limited to those acts that are "circumscribed" and "discrete"); *accord City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430-32 (4th Cir. 2019).

However, the Court need not opine on the validity of his designation to uphold the Final Rule because its ratification by Attorney General Barr cured any alleged defect in Whitaker's authority to issue the Rule.  *See Guedes*, 920 F.3d at 12 (declining to "wade into th[e] thicket" of plaintiff's FVRA challenge because ratification cured any alleged defect in Whitaker's designation).

Agency actions taken by an invalidly appointed official may be ratified by a properly appointed official.  *See, e.g.*, *Guedes*, 920 F.3d at 13; *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016); *CFPB v. Gordon*, 819 F.3d 1179, 1191 (9th Cir. 2016), *cert denied*, 137 S. Ct. 2291 (2017); *see also Wilkes-Barre Hosp. Co., LLC v. NLRB*, 857 F.3d 364, 370-72 (D.C. Cir. 2017); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117-21 (D.C. Cir. 2015); *Doolin Sec. Sav. Bank, FSP v. Office of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998).  Proper ratification of an action taken by an improperly appointed official cures any original defect in authority.  *See Wilkes-Barre*, 857 F.3d at 371 ("Ratification can remedy defects arising from the decisions of improperly appointed officials."); *Advanced Disposal*, 820 F.3d at 603 (upholding ratification of order issued by NLRB Regional Director, who had been appointed by improperly appointed NLRB); *Gordon*, 819 F.3d at 1190-91 (ratification by properly appointed CFPB Director cured defect from unconstitutionality of his initial appointment).

The Attorney General's ratification "cure[s] any deficiency caused by" Whitaker's alleged "lack of lawful authority."  *Doolin*, 139 F.3d at 212.  Plaintiff does not argue that the ratification is invalid or ineffective.  Accordingly, he has asserted no viable challenge to the Rule's current validity, regardless of the lawfulness of Whitaker's designation.  *See Guedes*, 920 F.3d at 13; *see also Doolin*, 139 F.3d at 214 (declining to decide "whether [the predecessor] lawfully occupied the position of Director").[6]

---

[6] Because the Attorney General's ratification of the Final Rule cures the alleged *legal defect* of Whitaker's appointment, but does not cure the alleged *factual injury*—namely, the forced divestment of Plaintiff's bump stock—even if Plaintiff had sought prospective relief against the Final Rule, that challenge would not have been considered through the lens of Article III mootness.  Rather, the ratification of

**B.** **The Declaratory Relief Plaintiff Seeks Would Do Nothing to Redress His Alleged Injury and Amounts to an Impermissible Advisory Opinion.**

As discussed above, Plaintiff does not allege that the Final Rule is invalid following its ratification. Rather, his apparent theory is that he can seek broad declaratory relief because his property right to alienate his bump stock was allegedly impaired between the Rule's issuance on December 26, 2018 and its ratification on March 11, 2019. *See* SAC ¶ 15. Plaintiff is not entitled to declaratory relief on that theory for two reasons.[7]

*First*, Plaintiff lacks standing to seek declaratory relief because it would do nothing to redress the purported injury he suffered prior to the Rule's ratification. *See Lujan*, 504 U.S. at 561 (plaintiff must show likelihood "that the injury will be redressed by a favorable decision") (citation omitted). Plaintiff asks for a declaration that Whitaker was invalidly designated and that the Rule was thus invalid between December 26, 2018—when it was issued—and March 11, 2019—when it was ratified. As discussed *infra*, that is not how ratification works; once ratified, the Rule was always valid, including at the time of its issuance. But, in any event, such a declaration would do nothing to remedy either of the injuries Plaintiff could theoretically assert. A declaration would not enable him to obtain any redress for his inability to sell his bump stocks during the interim between the Rule's issuance and its ratification. Nor would it remedy his ostensible current injury, the compelled divestment of his bump

---

the Rule would compel the dismissal of any such challenge for failure to state a claim. As the D.C. Circuit stated in unmistakable terms, "a properly appointed official's ratification of an allegedly improper official's prior action, rather than mooting a claim, resolves the claim on the merits by 'remedy[ing] [the] defect' (if any) from the initial appointment." *Guedes*, 920 F.3d at 13 (quoting *Wilkes-Barre*, 857 F.3d at 371); *id.* (reasoning that ratification "is treated as resolving the merits of the challenger's claim in the agency's favor"). In any event, as the D.C. Circuit explained in *Guedes*, no mootness exception would apply here. *Id.* at 15-16 (rejecting proffered mootness exceptions for voluntary cessation and for cases that are capable of repetition, yet evading review).

[7] As a threshold matter, the Second Amended Complaint does not contain *any* well-pleaded facts alleging that Plaintiff ever intended or attempted to alienate his bump stock. Therefore, Plaintiff does not plausibly allege that he was in fact injured prior to the Rule's ratification. And, as discussed *infra*, Plaintiff's theoretical past injury is a red herring and cannot save the Complaint from dismissal.

stock. Given Plaintiff's concession that the Rule was validly ratified, a declaration that it was briefly

invalid at some earlier time would have no concrete, real-world effect on his rights as to his bump

stock. Plaintiff therefore lacks standing to seek a declaratory judgment. *See Hewitt v. Helms*, 482 U.S.

755, 761 (1987) ("[A] judicial decree is not the end but the means. At the end of the rainbow lies not

a judgment, but some action (or cessation of action) by the defendant that the judgment produces—

the payment of damages, or some specific performance, or the termination of some conduct.");

*Armstrong World Indus., Inc. ex rel. Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) ("[E]ven if a

declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless

the parties' plans of actions are likely to be affected by a declaratory judgment." (citation omitted)).[8]

Thus, what Plaintiff seeks is an abstract judicial pronouncement that the Rule was briefly

unlawful prior to its ratification. Because declaratory judgments can only be issued in response to

"concrete legal issues, presented in actual cases, not abstractions," *United Pub. Workers of Am. (C.I.O.)*

*v. Mitchell*, 330 U.S. 75, 89 (1947), Plaintiff's requested relief is not available here.[9] A judgment relating

to Plaintiff's general objection about the "political expediency" of a challenged appointment is

"beyond the competence of courts to render." *Id.*; *see also Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977)

---

[8] The only relief that would in fact redress Plaintiff's alleged past injury to his right to alienate his bump stock is a suit for damages. However, Plaintiff has not sought damages in this action and indeed, could not, given the absence of any waiver of sovereign immunity for such a claim. *See, e.g., Deaf Smith Cty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1210 (D.C. Cir. 1998) (recognizing that APA does not waive sovereign immunity for suits seeking money damages (citing 5 U.S.C. § 702)).

[9] *See, e.g., Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1095 (9th Cir. 2001) (request for declaratory relief was impermissible advisory opinion where plaintiff "never sought damages in this litigation" and where injunctive relief was not available); *Int'l Coal. for Religious Freedom v. Maryland*, 3 F. App'x 46, 52 (4th Cir. 2001) (affirming dismissal where "declaratory judgment in this case . . . would, in effect, be no more than an abstract judicial pronouncement [by a federal court] that Maryland's General Assembly and Governor acted lawfully or unlawfully" (citation omitted); *Virginians Against a Corrupt Congress v. Moran*, 805 F. Supp. 75, 78 (D.D.C. 1992) (declaratory judgment would be advisory opinion where challenged "statute has been repealed and the disputed practice has ended"); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 64 (D.D.C. 2018) (declaration that "would be of no practical effect . . . would be tantamount to . . . an advisory opinion, a result not within this Court's power").

(case-or-controversy requirement not met where plaintiff's "present interest in the controversy is that he will obtain emotional satisfaction from a ruling").  As a result, the Court should decline Plaintiff's invitation to issue an advisory opinion.

*Second*, Plaintiff's past injury theory is based on a fundamental misconception of how ratification works.  "[T]he general rule [is] that the ratification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done.  In other words, . . . the ratification 'relates back' in time *to the date of the act by the agent*."  *Advanced Disposal*, 820 F.3d at 602 (emphasis added) (citation omitted); *see also* Floyd R. Mechem, Law of Agency § 535, 349-50 (1914) (ratification permits the subsequent adoption of a previously unauthorized act "with the same effect as though it had been properly done under a previous authority" (quoting *Wisconsin v. Torinus*, 49 N.W. 259, 259-60 (Minn. 1879)).  Ratification is thus treated as imbuing Whitaker with the authority to issue the Rule at the time he issued it.

Therefore, even assuming that a declaratory judgment somehow would redress an injury that Plaintiff allegedly suffered between the Rule's issuance and its ratification, and that Whitaker's designation was invalid, Plaintiff would still have no claim upon which relief can be granted because the Rule's ratification means that it was issued on December 26, 2018 pursuant to valid authority.  *See Guedes*, 920 F.3d at 13 ("[R]atification purges any residual taint or prejudice left over from the allegedly invalid appointment."); *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 708 n.5 (D.C. Cir. 1996) ("[T]he issue is not whether Legi-Tech was prejudiced by the original [decision], which it undoubtedly was, but whether, given the FEC's remedial actions, there is sufficient remaining prejudice to warrant dismissal.").  To put it differently, because Plaintiff concedes that the Rule was validly ratified, the purported impairment of the alienability of Plaintiff's bump stock was a natural consequence of a lawfully-issued Rule.  Therefore, even if Plaintiff has standing, he does not state a claim.

## III.    WHITAKER'S DESIGNATION WAS LAWFUL.

For the reasons discussed above, this Court need not reach the merits of Plaintiff's claims in Counts I and II.  But in all events, those claims fail as a matter of law because the FVRA expressly authorized the President to designate Whitaker an acting agency head and nothing in 28 U.S.C. § 508 or the Appointments Clause even arguably precluded that choice.  Unsurprisingly, the courts that have ruled on the question have universally concluded that Whitaker's designation was valid.[10]

### A.    The FVRA Authorized Whitaker's Designation.

#### 1.    *The FVRA's plain text applies to the Attorney General's vacancy.*

The FVRA authorizes the President to fill a vacancy in a covered Senate-confirmed position by designating, among other individuals, a senior "officer or employee" within the same agency "to perform the functions and duties of the vacant office."  5 U.S.C. § 3345(a)(3).  To be eligible for designation, the officer or employee must have been at the agency for at least ninety days in the 365-day period preceding the resignation, in a position for which the pay is equal to or greater than the minimum for GS-15 of the General Schedule, and she may not serve in an acting capacity if nominated to fill the vacancy on a permanent basis.  *See id.* §§ 3345(a)(3), 3345(b)(1); *SW Gen.*, 137 S. Ct. 929.

The FVRA on its face applies to vacancies in the office of Attorney General.  The positions covered by the FVRA generally include Senate-confirmed offices at all "Executive agenc[ies]," 5 U.S.C. § 3345(a), which includes the Department of Justice, *see id.* §§ 101, 105.  Moreover, the FVRA expressly contemplates that a vacant office may be the office of the agency head.  For example, it distinguishes between agency heads and non-agency heads with respect to the consequences of

---

[10] *See Guedes*, *supra*; *United States v. Santos-Caporal*, No. 1:18-CR-171-AGF-ACL, 2019 WL 468795 (E.D. Mo. Jan. 9, 2019), *adopting report and recommendation*, 2019 WL 460563 (E.D. Mo. Feb. 6, 2019); *United States v. Smith*, No. 1:18-CR-00015-MR-WCM, 2018 WL 6834712 (W.D.N.C. Dec. 28, 2018); *United States v. Peters*, 6:17-CR-55-REW-HAI-2, 2018 WL 6313534 (E.D. Ky. Dec. 3, 2018); *United States v. Valencia*, No. 5:17-CR-882-DAE(1)(2), 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018).

expiration of the statutory time limits, *see id.* § 3348(b), but creates no such distinction for purposes of the applicability of the designation methods in section 3345. Where Congress intended to exclude an office in an Executive agency from the FVRA's scope, it said so expressly, identifying specific offices in particular agencies to which the FVRA "shall not apply." *Id.* § 3349c. The office of Attorney General is not among those excluded offices. Congress also identified particular offices as to which specific provisions of the FVRA are inapplicable. *See id.* § 3348(e). The office of Attorney General is likewise not subject to any such statutory exclusion.

The FVRA contrasts significantly in this regard with the prior terms of the Vacancies Act. The Vacancies Act expressly excluded the office of Attorney General from the President's authority to fill vacant offices with persons other than the office's first assistant. *See* 5 U.S.C. § 3347 (1994) ("This section does not apply to a vacancy in the office of Attorney General"). But the FVRA eliminated that exclusion altogether, while retaining 28 U.S.C. § 508's specification that the Deputy Attorney General is the "first assistant" under § 3345, the operative FVRA section here.

Moreover, there are cabinet departments that do not have office-specific succession provisions at all (*e.g.*, 22 U.S.C. § 2651a(a) (Department of State)) and others that will often have no acting designee available because only a single individual is designated (*e.g.*, 29 U.S.C. § 552 (Department of Labor)). Accordingly, the FVRA indisputably authorizes senior agency employees to serve as acting agency heads in at least some circumstances. As demonstrated below, those circumstances include a vacancy in the office of Attorney General even if the Deputy Attorney General is available to serve.

2. *The President's authority under the FVRA is not displaced by 28 U.S.C. § 508.*

Plaintiff alleges that the President's authority under the FVRA to designate persons to serve as Acting Attorney General is displaced by 28 U.S.C. § 508. That statute, which long predates the FVRA's enactment, provides that when there is "a vacancy in the office of Attorney General . . . the Deputy Attorney General may exercise all the duties of that office." 28 U.S.C. § 508(a). It further

provides that if the Deputy Attorney General is not available, "the Associate Attorney General shall act as Attorney General," and the Attorney General may designate the Solicitor General and the Assistant Attorneys General to act as Attorney General in further order of succession. *Id.* § 508(b). According to Plaintiff, this provision deprives the President of his authority under the FVRA to designate someone other than the Deputy Attorney General to serve as Acting Attorney General unless the Deputy Attorney General and the Associate Attorney General (an perhaps all others listed in § 508) are unavailable. The FVRA's text and statutory-interpretation canons foreclose this argument. *See Guedes*, 356 F. Supp. 3d at 138-44.

    **a.** In enacting the FVRA, Congress recognized the existence of office-specific vacancy statutes like § 508. The text and structure of the FVRA make clear that Congress intended for the FVRA and office-specific statutes to co-exist and complement each other, rather than for office-specific statutes to displace the FVRA, even in part. *Id.*

    By default, the FVRA is the "*exclusive* means for temporarily authorizing an acting official to perform the functions and duties of any office [requiring Senate confirmation] of an Executive agency." 5 U.S.C. § 3347(a) (emphasis added). This rule of exclusivity applies "unless" one of the exceptions in § 3347(a) applies. *Id.* One of the specified exceptions is the existence of "a statutory provision [that] expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity," such as § 508. *Id.* § 3347(a)(1)(B). In that case, the FVRA ceases to be "the *exclusive* means" of filling the vacancy. But the FVRA "remains *a* means of filling the vacancy." *Guedes*, 356 F. Supp. 3d at 139. In other words, § 3347(a) provides that office-specific statutes such as § 508 are exceptions to the FVRA's generally exclusive applicability, not that they supersede or displace the FVRA in whole or in part.

    The structure of the statute reinforces this reading of its text. Section 3347's proviso that the FVRA is not the "exclusive" means of addressing vacancies in specified circumstances stands in

marked contrast with § 3349c, which provides that the FVRA "shall not apply" to specified offices. Had Congress wanted to make the FVRA inapplicable to offices for which an office-specific statute designated an acting official, it would have listed such statutes in § 3349c, not § 3347. Section 3347(a) also stands in contrast with § 3348(e), which provides that specific provisions of the FVRA "shall not apply" to specified offices. At a minimum, if Congress had actually meant to provide that the FVRA's provisions are inapplicable, in whole or in part, to offices subject to office-specific succession statutes, it would have employed parallel language throughout, providing in § 3347 that the FVRA "shall not apply" in whole (*cf.* § 3349c) or in part (*cf.* § 3348(e)) where office-specific statutes exist, rather than merely stating that the FVRA is not "exclusive" when those statutes exist.

Indeed, the FVRA's legislative history confirms that statutes like § 508 were understood by Congress to work in conjunction with—not to displace—the FVRA. The Senate Committee Report accompanying the bill that led to the FVRA identified then-existing, office-specific vacancy statutes and stated that the bill "retains" § 508 and the other such statutes, S. Rep. No. 105-250, at 15, 16-17 (1998), but that "even with respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an *alternative* procedure for temporarily occupying the office." *Id.* at 17 (emphasis added).

For all these reasons, the Ninth Circuit in *Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550 (9th Cir. 2016), and the U.S. District Court for the District of Columbia in *Guedes* and in *English v. Trump*, 279 F. Supp. 3d 307 (2018), have held that office-specific vacancy and succession statutes do not preclude the President from exercising his designation authority under the FVRA.

**b.** Given the clarity of the FVRA's text and structure establishing that § 508 and similar office-specific statutes do not displace the FVRA altogether, Plaintiff appears to argue that when a vacancy is subject to an office-specific succession statute, the FVRA does not authorize the President to

designate persons to fill the vacancy unless no one specified by the office-specific statute is available—in other words, unless and until the statutory line of succession is exhausted.

As a threshold matter, if the FVRA incorporated Plaintiff's proposed exhaustion rule, that would mean that President George W. Bush acted unlawfully in 2007 when he designated Assistant Attorney General Peter D. Keisler to serve as Acting Attorney General in place of Solicitor General Paul Clement, who was next in order of succession under the succession order promulgated by the Attorney General pursuant to § 508(b). *See Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208 (2007) ("2007 OLC Op."). Plaintiff's theory would also mean—*contra* the district court decision in *English*—that President Trump acted unlawfully when he designated the Director of the Office of Management and Budget to serve as the Acting Director of the Consumer Financial Protection Bureau rather than the Deputy Director. Plaintiff's theory would also mean that Presidents could not invoke the FVRA to provide for orders of succession that designate someone other than the statutory designee, something that Presidents have consistently done,[11] or that bypass an available statutory designee.[12] Notably, no court has ever found that any of the office-specific statutes designating that an official "may" or "shall" serve as the acting head in the event of a vacancy removes the offices they cover from the FVRA's scope.[13]

---

[11] *See, e.g.*, *Providing an Order of Succession Within the Department of Defense*, Exec. Order No. 13,533, 75 Fed. Reg. 10163 (Mar. 1, 2010); 5 U.S.C. § 3345 note (FVRA succession plans for Labor, Treasury, HHS, EPA, OPM, ODNI, and NARA); *see also* Presidential Designations of Marianne Horinko (EPA, July 11, 2003, effective July 12, 2003), Beth Cobert (OPM, July 10, 2015), Grace Bochenek (Energy, Jan. 17, 2017, effective Jan. 20, 2017), Norris Cochran (HHS, Jan. 17, 2017, effective Jan. 20, 2017), Edward Hugler (Labor, effective Jan. 20, 2017), John "Mick" Mulvaney (CFPB, Nov. 24, 2017, effective Nov. 25, 2017).

[12] On August 11, 2008, the President designated Michael Hager, Assistant Secretary of Veterans Affairs, to serve as Acting Director of OPM, even though Howard Weizmann was Deputy Director. Similarly, on August 13, 2008, the President designated Santanu Baruah, Assistant Secretary of Commerce for Economic Development, as Acting Administrator of the Small Business Administration, even though Joyita Carranza was Deputy Administrator.

[13] This record is consistent with the Office of Legal Counsel's longstanding view that office-specific statutes provide a route to designate an acting officer without displacing the FVRA in whole or in

22

More fundamentally, Plaintiff's proposed exhaustion rule has no basis in the FVRA. It does not appear in § 3345(a)(2) and § 3345(a)(3), which authorize the President to designate persons other than the first assistant to serve in an acting capacity. Nor does it appear in § 3347(a), which provides only that the FVRA is the exclusive means unless an office-specific statute exists, *not* that the FVRA is inapplicable unless an office-specific statute is exhausted, or that an office-specific statute is exclusive unless it is exhausted.

Plaintiff's proposed exhaustion rule also has no basis in § 508. Notably, Section 508 expressly cross-references the FVRA by providing that, "for the purpose of section 3345 of title 5[,] the Deputy Attorney General is the first assistant to the Attorney General." This provision avoids potential uncertainty about the identity of the Attorney General's first assistant under the FVRA. But Plaintiff's underlying theory is that § 508 displaces the FVRA unless and until the Deputy Attorney General is unavailable. As a result, under Plaintiff's theory, there is no need for § 508 to prescribe who qualifies as first assistant for purposes of the FVRA when the Deputy Attorney General *is* available, and doing so would be superfluous.

## B. The President's Selection of Whitaker Under the FVRA Does Not Violate the Appointments Clause.

The Attorney General is a principal officer and must be Senate-confirmed. But that does not meant that an individual who *temporarily* performs the functions of a principal office in an *acting* capacity must also be appointed as a principal officer. The Appointments Clause is silent on the issue. Accordingly, "historical practice" is entitled to "significant weight." *NLRB v. Noel Canning*, 573 U.S.

---

part. *See, e.g.*, Mem. from Steven A. Engel, Asst. Att'y Gen., to Emmett T. Flood, Counsel to the President, *Designating an Acting Attorney General*, at 2-6 (Nov. 14, 2018) ("2018 OLC Op.") (to be filed in Joint Appendix); Mem. from Steven A. Engel, Asst. Att'y Gen., to Donald F. McGahn II, Counsel to the President, *Designating an Acting Director of the Bureau of Consumer Financial Protection*, at 4-8 & nn. 2-3 (Nov. 25, 2017); 2007 OLC Op.; *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121, 121 n.1 (2003) ("2003 OLC Op.").

513, 524 (2014). And here, decisive historical practice and precedent from all three branches of government underscore that the temporary designation of an individual as acting agency head does not require Senate confirmation because the individual does not thereby become a principal officer.[14]

*First*, Acts of Congress passed in three different centuries have authorized the designation of non-Senate-confirmed acting principal officers. *See, e.g.*, 5 U.S.C. § 3345(a)(1), (3); Act of July 23, 1868, ch. 227, § 1, 15 Stat. 168; Act of Feb. 13, 1795, 1 Stat. 415 ("1795 Act"); Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281 ("1792 Act").[15] *Second*, the Executive Branch has repeatedly designated non-Senate-confirmed persons to serve as acting agency heads under these statutes. *See* 2018 OLC Op. at 8-18, 22-26 (identifying over 160 occasions, including the Attorney General). *Third*, the Supreme Court has long held that the Appointments Clause permits a non-confirmed person to temporarily perform the duties of a vacant principal office. *See United States v. Eaton*, 169 U.S. 331, 343 (1898).

Recognizing that non-Senate-confirmed individuals unquestionably can serve as acting principal officers, Plaintiff manufactures a standard, unmoored from the text of the Appointments Clause, which would impermissibly limit the President's authority to designate a non-Senate-confirmed person an acting principal. Plaintiff relies on two flawed arguments: (1) a non-Senate-confirmed individual may serve as an acting principal officer only if she is that officer's "first assistant"—such that temporary acting service is purportedly part of her own office's job responsibilities—or if she were to replace an unavailable "first assistant"; and (2) the President may not direct a senior employee, rather an officer, to perform temporarily the duties of a vacant principal

---

[14] This Court need only decide that a person performing temporarily the duties of a principal officer is not himself a principal officer. Because the President's designation satisfies the requirements for an inferior officer, *see* 2018 OLC Op. at 9, it is unnecessary to further decide whether the temporary nature of the position renders it an inferior office, *cf. Morrison v. Olson*, 487 U.S. 654, 672 (1988), or not an office at all, *cf. Auffmordt v. Hedden*, 137 U.S. 310, 326-27 (1890); *see infra* pp. 28-30.

[15] *See also* 12 U.S.C. § 4512(f) (FHFA); *id.* § 5491(b)(5) (CFPB); 20 U.S.C. § 3412(a)(1) (Education); 31 U.S.C. § 502(f) (OMB); 38 U.S.C. § 304 (VA); 40 U.S.C. § 302(b) (GSA); 42 U.S.C. § 7132(a) (Energy); 49 U.S.C. § 102(e) (Transportation); 50 U.S.C. § 3037(a) (CIA).

office in an acting capacity under the FVRA. Neither argument has any basis in the text of the Constitution or historical practice. *Guedes*, 356 F. Supp. 3d at 144-55. Therefore, to the extent the Second Amended Complaint pleads a freestanding constitutional claim, it should be dismissed.

1.    *The Appointments Clause does not confine the President to choosing Senate-confirmed officers or first assistants to serve as acting agency heads.*

Two hundred years of precedent from all three branches of government contradict Plaintiff's arguments. To begin with legislative practice, "from the time of the founding to today, Congress has continuously authorized the President to direct persons who are not first assistants and who lack any constitutionally relevant Senate confirmation to perform the duties of a principal office temporarily on an acting basis." *Guedes*, 356 F. Supp. 3d at 149. The *Guedes* opinion surveys this "unbroken legislative practice" in detail. *See id.* at 148-49.

As early as 1792, Congress authorized the President to choose "any person" to serve as an acting Secretary of State, Treasury, or War in the event of death, illness, or absence from the seat of government. *See SW Gen.*, 137 S. Ct. at 935. In 1795, Congress expanded the President's authority by authorizing him to choose any person to serve as Acting Secretary *regardless* of the reason for the vacancy, while "impos[ing] a six-month limit on acting service." *Id.* Congress easily could have limited the President's authority under these statutes by: (1) designating as acting the "first assistant" in each department; (2) requiring the President to choose among Senate-confirmed officials or at least among federal officers; or (3) authorizing the President to choose otherwise only if none of the prior categories of individuals were available or if there were some other type of emergency. But Congress did none of these things. The 1792 and 1795 Acts are of special importance, as "early congressional practice . . . provides contemporaneous and weighty evidence of the Constitution's meaning." *Alden v. Maine*, 527 U.S. 706, 743-44 (1999) (citation omitted).

In the 1860s, Congress replaced these statutes with more general vacancy laws. *Guedes*, 356 F. Supp. 3d at 148-49. The Vacancies Act of 1868 imposed short time limits on acting service and limited

the President's choice of persons to fill vacant offices, but it did not confine the role of acting agency head to first assistants, as it allowed the President to choose any Senate-confirmed officer (even if the officer's duties were entirely unrelated to the duties of the vacant office and the officer had been confirmed before the Vacancies Act was enacted). *Id.* at 149. Congress gradually liberalized the terms of the Vacancies Act over the intervening years, then substantially expanded the law by enacting the FVRA, which expressly authorizes the President to direct non-Senate-confirmed senior officers and employees of an agency to serve as acting agency head. Just like the early congressional statutes, the FVRA authorizes the President to fill vacancies, including for agency heads, for a temporary period of at least several months without regard to whether there is a "first assistant" or Senate-confirmed officer available to serve or any form of exigency.

This legislative "understanding is further confirmed by the longstanding practice of the Executive Branch." *Id.* at 150. Presidents historically have chosen non-Senate-confirmed individuals to assume temporarily the duties of principal offices in the event of vacancies or absences, even though such individuals were *not* first assistants in the sense that their pre-existing job responsibilities included serving as acting agency head when needed. Most significantly, in over one hundred instances, Presidents exercised their discretion to designate non-Senate-confirmed chief clerks to serve as acting or *ad interim* Secretaries—a distinct role for which they sometimes obtained additional compensation. *See Guedes*, 356 F. Supp. 3d at 150-51; *see also In re Cornelius Boyle*, 34 Cong. Rep. C.C. 44, at 8-9 (1857); *In re Asbury Dickins*, 34th Cong., 1st Sess., Rep. C.C. 9, at 17 (Cl. 1856). Presidents also frequently designated as acting principal officers the heads of other Departments, even when the functions of their Senate-confirmed offices were not germane to the duties of the vacant offices and thus the Appointments Clause would have required additional Senate confirmation for them to fill those offices on a permanent basis. *Guedes*, 356 F. Supp. 3d at 151-52; *see Biographical Directory of the American Congress*,

*1774–1971*, at 13-14 (1971). Indeed, on at least three occasions, President Jackson designated persons with no government position to serve as an acting principal officer. *Guedes*, 356 F. Supp. 3d at 151.

And here too, the historical executive practice continues to modern times: Presidents George W. Bush and Barack Obama used their FVRA authority to place chiefs of staff in the lines of succession for executive agencies, including sometimes above a Senate-confirmed officer within the same agency. *See* 2018 OLC Op., Ex 1 at 23 nn.13-14 (collecting examples). That should not be surprising, because a chief of staff has a particularly comprehensive understanding of the agency head's duties and the agency's operation as a whole.

This consistent record of legislative and executive practice is confirmed by Supreme Court precedent, which "has repeatedly embraced the government's view that it is the temporary nature of acting duties that permits an individual to perform them without becoming a principal officer under the Appointments Clause." *Guedes*, 356 F. Supp. 3d at 146. The leading case, *United States v. Eaton*, 169 U.S. 331 (1898), forecloses Plaintiff's constitutional claim. *See Guedes*, 356 F. Supp. 3d at 146-51.

Eaton, a missionary who was not employed by the federal government, was appointed as Vice Consul General of Siam in order to take over the consulate after the departure of the Consul General, who was terminally ill. *Eaton*, 169 U.S. at 331-32. Eaton served as acting Consul General for almost a year. *Id.* at 332-33. In a dispute over salary payments, the Supreme Court upheld the constitutionality of Eaton's appointment and the underlying statutory scheme providing for his appointment. *Id.* at 334-35, 343-44, 352. *Eaton* held that a subordinate "charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions," is not "thereby transformed into the superior and permanent official" for purposes of the Appointments Clause and may serve without Senate confirmation. *Id.* at 343-44.

As the district court in *Guedes* explained, "to the extent *Eaton* involved a first assistant at all, it involved one only in the most superficial and formalistic sense": Eaton was a clergyman with no

connection to the government, who upon the Consul General's imminent departure was appointed to the office of Vice Consul, an office the sole function of which was to assume the Consul General's duties in the event of absence or vacancy. 356 F. Supp. 3d at 147. The core feature of the Vice Consul's role that distinguished it from that of the Consul General for constitutional purposes, and that permitted Eaton to serve as Acting Consul General without Presidential selection and Senate confirmation, was the fact that Congress had confined Vice Consuls to a statutorily limited period of service "and thereby . . . deprive[d] them of the character of 'consuls.'" *Eaton*, 169 U.S. at 343. The "special and temporary conditions" referred to in *Eaton* were not any particular exigency, but the limits of the then-regulatory scheme, which permitted service during "the absence or the temporary inability of the consul," whatever the cause. *Id.* at 342-43. *Eaton* thus confirmed the general rule that the designation of a non-confirmed official to *temporarily* perform a principal office's duties does not "transform[]" the acting official "into the superior and permanent official" requiring Senate confirmation. *Id.* at 343-44; *accord In re Cornelius Boyle*, 34 Cong. Rep. C.C. 44, at 8.

Finally, each time the Supreme Court has cited *Eaton*, it has characterized the holding based on the limited duration of Eaton's service, without restricting it to first assistants or particular exigencies. *Guedes*, 356 F. Supp. 3d at 147 n.12. In *Morrison*, the Court affirmatively relied on the temporary nature of the Vice Consul's acting service in *Eaton* to support the Court's holding that the independent counsel was an inferior rather than principal officer. 487 U.S. at 670-73. And in *Edmond v. United States*, 520 U.S. 651, 661 (1997), the Court cited *Eaton* with approval and described it as holding that "a vice consul charged temporarily with the duties of the consul" was an inferior officer.

> 2. *The Appointments Clause does not prohibit the President from directing senior federal employees to serve as acting agency heads.*

The Appointments Clause specifies the process for selecting all "Officers" whose positions are "established by Law," U.S. Const. art. II, § 2, cl. 2. Its text does not expressly address whether non-officer employees may temporarily perform the functions of a vacant office. In particular, the

28

Clause neither says that the functions of an office must *always be performed* by an officer nor says that an individual temporarily performing such functions *necessarily becomes* an officer. To the contrary, the Supreme Court has treated individuals as "mere employees" rather than constitutional "officers" when "their duties were 'occasional or temporary' rather than 'continuing and permanent.'" *Lucia*, 138 S. Ct. at 2051 (quoting *United States v. Germaine*, 99 U.S. 508, 511-12 (1878)).

Again, Plaintiff's constitutional claim is not just unsupported by the Appointments Clause's text, but also foreclosed by historical practice. As noted above, the 1792 and 1795 vacancy acts provided that the President may "authorize any person . . . to perform the duties" of the Secretaries of State, Treasury, and War in the event of vacancies or absences. 1 Stat. at 281; 1 Stat. at 415. The statutes thus unambiguously gave Presidents plenary discretion to designate employees (as well as private citizens) to serve.

Even if the Constitution did require employees to be appointed as inferior officers before they could perform the duties of a vacant principal office on an acting basis, the President's designation of Whitaker pursuant to the FVRA would satisfy the Appointments Clause, which authorizes Congress "by Law [to] . . . vest the Appointment" of inferior officers "in the President alone." U.S. Const. art. II, § 2, cl. 2. The fact that the FVRA does not use the "magic word[ ]" "appoint" and instead uses the word "direct," 5 U.S.C. § 3345(a)(2)-(3), is of no constitutional or statutory significance. *Guedes*, 356 F. Supp. 3d at 155. If necessary, an FVRA direction may be treated as a constitutional appointment, because, at the Founding, "the verb 'appoint' meant 'to establish anything by decree' or 'to allot, assign, or designate.'" *SW Gen.*, 137 S. Ct. at 946 (Thomas, J., concurring) (cleaned up); *see also Guedes*, 356 F. Supp. 3d at 154-55 (distinguishing *Weiss v. United States*, 510 U.S. 163 (1994), which held only that a statute using terms like "detail" and "assign" did not require an "appointment" as a statutory matter, not that it foreclosed interpreting the statute as authorizing an appointment even if necessary to avoid a constitutional problem). "[U]nderstanding the President's 'direct[ion]' under 5 U.S.C. § 3345(a)(3)

to involve an appointment of an employee as an inferior officer" would avoid constitutional questions that might be presented by an employee's temporary performance of the duties of a vacant office. 2003 OLC Op. at 125. Indeed, if Congress had created an "office" of "acting agency head" and authorized the President to "appoint" to that office an employee covered by 5 U.S.C. § 3345(a)(3), that would be materially indistinguishable from both the statutory scheme in *Eaton* and the FVRA itself.

In conclusion, consistent with practice and precedent, Whitaker was "charged with the performance of the duty of the superior for a limited time" that was reasonable in light of the "special" circumstance of a vacancy triggered by a resignation. *Eaton*, 169 U.S. at 343. The President's designation of the former Attorney General's Chief of Staff for the few months necessary for Senate confirmation of the replacement Attorney General falls well within the authority contemplated by the time limitations in the FVRA, the 1795 vacancy statute, and *Eaton*. Any concern about "the pretextual use of the 'temporary' label to circumvent the Senate's advice and consent role," *Guedes*, 356 F. Supp. 3d at 153, is particularly chimeric given the confirmation of William P. Barr as Attorney General.

Because Whitaker's designation was valid under both the FVRA and the Appointments Clause, Plaintiff fails to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed for lack of jurisdiction, or alternatively, for failure to state a claim.

Dated: May 8, 2019      Respectfully submitted,

              JOSEPH H. HUNT
              Assistant Attorney General

              HASHIM M. MOOPPAN
              JAMES M. BURNHAM
              Deputy Assistant Attorneys General

JENNIFER D. RICKETTS
Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ *Cesar A. Lopez-Morales*
CESAR A. LOPEZ-MORALES (MA Bar #690545)
REBECCA CUTRI-KOHART
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW Rm. 12302
Washington, DC 20530
Telephone: (202) 305-8550
Fax: (202) 616-8470
Email: Cesar.a.lopez-morales@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2019, a copy of the foregoing motion was filed electronically via the Court's ECF system which sent notification of such filing to all counsel of record.

/s/ *Cesar A. Lopez-Morales*
CESAR A. LOPEZ-MORALES (MA Bar #690545)
Trial Attorney
U.S. Department of Justice
