## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARRETT KAJMOWICZ, | ) |
| | ) |
| Plaintiff, | ) |
| | )   2:19-cv-00187 |
| v. | ) |
| | ) |
| MATTHEW G. WHITAKER, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Now before the Court is Defendants' Motion to Dismiss brought for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 88.) For the reasons set forth in this Opinion, the Court will grant Defendants' Motion and dismiss this action in its entirety.

### I.     BACKGROUND

In October 2017, a man armed with rifles attached with bump stocks[1] killed 60 people[2] and wounded around 500 others when he opened fire from a luxury hotel room on thousands gathered below at an outdoor concert in Las Vegas, Nevada. *See Bump-Stock-Type Devices*, 83 Fed. Reg. 66516 (Dec. 26, 2018). Following the shooting, Acting Attorney General Matthew Whitaker, on

---

[1] A "bump stock" is a device that attaches to a firearm that allows the shooter to begin a continuous firing cycle with a single pull of the trigger. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018).

[2] Fifty-eight people died within a couple of days of the shooting, and two others died later from complications related to their injuries. The Las Vegas police increased the official death toll from 58 to 60 on October 1, 2020. *See* Rio Lacanlale, *Sheriff admits 'failure to recognize' Route 91 victims, increases death toll*, LAS VEGAS REVIEW JOURNAL, (Oct. 1, 2020), https://www.reviewjournal.com/crime/shootings/sheriff-admits-failure-to-recognize-route-91-victims-increases-death-toll-2134280/.

instruction from then-President Donald J. Trump, issued a rule that classified bump stocks as machine guns.[3] The Rule was published in the Federal Register on December 26, 2018. *Id.* at 66514. In addition to prohibiting the possession, sale, and transfer of bump stocks, the Rule required current possessors of bump stocks to destroy them or surrender them with the nearest Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") office by March 26, 2019, the Rule's effective date. *See id.*

President Trump designated Matthew Whitaker as Acting Attorney General, purportedly pursuant to the Federal Vacancies Reform Act ("FVRA"), after Attorney General Jefferson B. Sessions III resigned on November 7, 2018. Mr. Whitaker served in this position until William Barr was appointed by the President as Attorney General after being confirmed by the Senate on February 14, 2019. *See* 165 Cong. Rec. S1397. Thereafter, Attorney General Barr ratified the Rule on March 14, 2019. *See Bump-Stock-Type Devices*, 84 Fed. Reg. 9239 (Mar. 14, 2019).

On February 20, 2019, six days after Mr. Barr was sworn in as Attorney General, Plaintiff, who owns two bump stocks as defined in the Rule,[4] filed a Complaint in this Court arguing that Mr. Whitaker lacked the legal authority to promulgate the Rule because his designation as Acting Attorney General was unconstitutional and unlawful. (ECF No. 1.) The next day Plaintiff moved for a preliminary injunction. (ECF No. 5.) Following Attorney General Barr's ratification of the Rule, Plaintiff withdrew the motion for a preliminary injunction and filed a First Amended Complaint and then a Second Amended Complaint in short order. (ECF Nos. 38, 39, 43.) Subsequently, Defendants moved to dismiss (ECF No. 52) and Plaintiff moved for summary judgment (ECF No. 55). The Court held oral argument on these Motions in February 2020, near

---

[3] "Machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

[4] The involved bump stocks are currently in the custody of the ATF. (Third Amended Complaint ¶ 9.)

the conclusion of which Plaintiff orally requested to amend the Complaint for yet a third time. (*See* ECF Nos. 80, 84.) The Court granted Plaintiff's request and dismissed the pending motions without prejudice. Plaintiff then filed a Third Amended Complaint ("TAC")[5] seeking injunctive and declaratory relief and alleging violations of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, the FVRA, 5 U.S.C. § 3345 *et seq.*, the Attorney General Succession Act, 28 U.S.C. § 508, and the Administrative Procedure Act, 5 U.S.C. § 706. (ECF No. 85.) Defendants again moved to dismiss. (ECF No. 88.) The matter is fully briefed. (*See* ECF Nos. 89, 95, 96.)[6]

## II.   LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). At issue is "the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The party asserting jurisdiction bears the burden of proving its claims are properly before the Court. *Dev't Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). "A motion to dismiss for want of standing is . . . properly brought pursuant

---

[5] This of course means that the Complaint now before the Court is Plaintiff's *fourth* pleading endeavor.

[6] The litigation of at least some of these issues is not novel in this Court. These matters have been ventilated in an array of other actions filed by counsel for Plaintiff in a number of other federal courts across the country. *See Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-1079, 2021 WL 2157685, at *4–5 (4th Cir. May 27, 2021) (affirming dismissal based on lack of standing and noting that the plaintiff failed to challenge the Rule as ratified by Attorney General Barr); *Koster v. Whitaker*, No. 20-15077, 843 F. App'x 917 (9th Cir. Apr. 8, 2021) (affirming dismissal based on lack of standing and recognizing that the district court "appropriately declined to consider" the plaintiffs' challenge to the ratification's validity because the challenge was not raised until the reply brief); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-5304, 2020 WL 6580046 (D.C. Cir. Oct. 30, 2020) (*per curiam*) (affirming dismissal based on lack of standing and noting that the plaintiff forfeited its challenge to the ratification of the Rule because the plaintiff did not raise the argument below); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019) (affirming denial of a preliminary injunction in part because the plaintiffs failed to establish a likelihood of success for their challenge to Mr. Whitaker's approval of the Rule's issuance as a result of Attorney General Barr's independent ratification of the Rule, the validity of which the plaintiffs did not challenge), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), *and cert. denied*, 140 S. Ct. 789 (2020).

to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

In reviewing a Rule 12(b)(1) motion, the Court must determine whether the attack on its jurisdiction is facial or factual. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). A facial attack challenges the Court's jurisdiction without disputing the averred facts in the complaint and requires the Court to treat those averments as true. *Id.* Here, Defendants make a facial challenge because they have not disputed the validity of Plaintiff's factual claims. Defendants contend that the allegations of the TAC, even accepted as true, are insufficient to establish Article III standing for Plaintiff's challenge to the alleged FVRA policy. (*See* ECF No. 89, at 13.) In considering a facial challenge, courts are to apply the same standard that they use when reviewing a Rule 12(b)(6) motion for failure to state a claim. *See Petruska*, 462 F.3d at 299 n.1 (explaining "that the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)" (citation omitted)).

A Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A complaint must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When determining whether dismissal is appropriate, the Court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate whether all the elements identified in part one of the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citation omitted).

## III.   DISCUSSION

The TAC includes: (1) a challenge to the alleged Presidential policy of unlawfully installing invalid acting officers, and (2) a challenge to the Rule. Defendants move to dismiss the TAC first because they argue that Plaintiff lacks Article III standing to make the FVRA-policy claim. Second, they argue that the challenge to the Rule fails because Attorney General Barr's ratification of the Rule cured any alleged legal defect in Mr. Whitaker's designation. And regardless, they contend that Mr. Whitaker was validly serving as the Acting Attorney General, as both a statutory and constitutional matter.

In response, Plaintiff asserts that he has Article III standing to challenge the alleged FVRA policy. Next, he argues that Mr. Whitaker did not have authority to issue the Rule and that an anti-ratification provision within the FVRA prohibited Attorney General Barr's ratification of the Rule. Further, even if ratification of the Rule were valid, Plaintiff argues that the "voluntary cessation" mootness doctrine applies and prevents the ratification from curing any alleged defect of Mr. Whitaker's designation.

The Court concludes that Plaintiff lacks standing to challenge the alleged FVRA policy, that the Rule was properly ratified, and that the voluntary cessation limitation on mootness is irrelevant and would not apply in any event. Thus, the Court need not address the validity of Mr. Whitaker's designation.

### A.   Challenge to the Alleged FVRA Policy

Plaintiff alleges that President Trump had a "policy" of using the FVRA "to designate a non-Senate confirmed officer . . . to act as a principal officer during an absence or vacancy when

that officer's 'first assistant' is available to serve" and when an "office-specific designation statute[] automatically designated the first assistant[] to act during" the absence or vacancy. (TAC ¶¶ 4, 16.)[7] Plaintiff asserts that he has Article III standing to challenge such a policy because Plaintiff was harmed when the President designated Mr. Whitaker as Acting Attorney General pursuant to that policy and Mr. Whitaker "took direct action that harmed Plaintiff." (*Id.* ¶ 5.) Defendants argue that Plaintiff lacks standing to challenge any such alleged policy because Plaintiff cannot establish a concrete injury or a causal connection between the alleged injury and the alleged conduct of Defendants. (ECF No. 89, at 15–17.)

The federal judicial power extends only to "Cases" and "Controversies." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing U.S. Const. art. III, § 2). The standing doctrine, which is rooted in the traditional understanding of a case or controversy, "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *See id.* The "irreducible constitutional minimum of standing" requires that Plaintiff establish: (a) that he has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (b) that the injury is "fairly . . . trace[able] to the challenged action of the defendant," and not the result of the independent action of some third party; and (c) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). Plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)). The elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561.

---

[7] President Donald J. Trump left office at Noon on January 20, 2021, when Joseph R. Biden, Jr. became President.

In deciding whether Plaintiff has standing to pursue the alleged FVRA policy claims, the Court joins the multiple other courts that have considered this precise question in this precise context and concludes that Plaintiff fails to establish Article III standing. *See Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-1079, 2021 WL 2157685, at *5 (4th Cir. May 27, 2021); *Koster v. Whitaker*, No. 20-15077, 843 F. App'x 917, 918 (9th Cir. Apr. 8, 2021); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-5304, 2020 WL 6580046, at *1 (D.C. Cir. Oct. 30, 2020) (*per curiam*).

Plaintiff's alleged injury cannot confer standing. An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan,* 504 U.S. at 560. To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560 n.1). The particularized injury must also be actual or imminent, not hypothetical or conjectural. *Lujan*, 504 U.S. at 560 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Plaintiff's theory of injury is too speculative to establish the injury-in-fact requirement for Article III standing. Plaintiff contends that he continues to face a realistic probability of harm because the President "need only install an invalid officer pursuant to the unlawful designation policy who then issues a gun-control regulation." (ECF No. 95, at 32.)[8] Such a theory is insufficient because it "depends on a 'highly attenuated chain of possibilities.'" *Koster*, 843 F. App'x at 918 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Moreover, Plaintiff's theory, as

---

[8] Parts of the TAC emphasize President Donald J. Trump's alleged practice of making allegedly unlawful designations. (TAC ¶¶ 17–18.) At this point in time, however, Donald Trump is of course no longer President. But though the TAC focuses in particular on President Trump's alleged impermissible FVRA policy, it also alleges that such a policy was first endorsed in 2003 and that Presidents have consistently invoked their FVRA authority in this way. (TAC ¶¶ 16–17.) Plaintiff also notes in his briefing that gun measures "are regularly promulgated by the Government." (ECF No. 95, at 33.) Therefore, Plaintiff's theory of standing appears to be the same despite the change in Presidential administrations. That said, in the Court's judgment that theory relies on a relay race of supposition and hypotheticals as to how President Biden and his successors would likely discharge the obligations of the Presidency that are insufficient to fulfill the standing requirement.

articulated, is missing a link as he neglects to recognize that any gun-control regulation would have to then affect him in such a way that a particularized injury would result. For Plaintiff's theory to work, "[n]ot only must the President apply the FVRA to a vacant high-level executive branch position in a way that plaintiff argues is unconstitutional or invalid, but that person must take some action which would affect this plaintiff in a 'personal and individual way.'" *Patrick v. Whitaker*, 426 F. Supp. 3d 182, 188 (E.D.N.C. 2019) (citing *Lujan*, 504 U.S. at 560 n.1), *aff'd sub nom. Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-1079, 2021 WL 2157685 (4th Cir. May 27, 2021).[9] This sort of "tenuous chain of uncertain events" does not suffice to establish the requisite injury. *See Firearms Pol'y Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 124 (D.D.C. 2019), *aff'd sub nom. Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-5304, 2020 WL 6580046 (D.C. Cir. Oct. 30, 2020); *see also Patrick*, 2021 WL 2157685, at *5 (describing the plaintiff's theory as a "string of hypothetical contingencies" insufficient to establish a real and particularized injury for the purposes of standing).

Because the TAC does not allege a plausible imminent injury, Plaintiff lacks standing to pursue his alleged FVRA-policy claims. The Court will therefore dismiss Plaintiff's claims for lack of Article III standing to the extent they challenge the alleged FVRA policy.

### B.   Challenge to the Rule

Plaintiff challenges the Rule on the basis of a newly alleged theory that Attorney General Barr's ratification of the Rule was invalid under an FVRA statutory provision that bars ratification

---

[9] Defendants frame the chain of events this way: "For Plaintiff to establish standing with respect to a hypothetical future vacancy in a principal office, the Court must assume that: (1) the vacant principal office is subject to an office-specific statute that designates a 'first assistant' to serve as acting officer during a vacancy; (2) the hypothetical first assistant is available to serve; (3) the President will bypass the first assistant and exercise his discretion under the FVRA to direct a senior employee to serve as the acting principal officer; (4) the new acting principal officer has the authority to promulgate a regulation relating to guns; (5) the acting principal officer will exercise that discretionary authority and promulgate a regulation affecting guns; and (6) the unspecified regulation affects a gun which Plaintiff has some interests in such that there results a concrete and particularized injury that is actual or imminent to Plaintiff himself." (ECF No. 96, at 6–7.)

in certain instances.[10] And Plaintiff further submits that even if the Court finds that the Rule were validly ratified, the voluntary cessation exception to the mootness doctrine prevents the ratification from curing any defects from Mr. Whitaker's allegedly unlawful designation. For the reasons below, the Court disagrees with Plaintiff on both points.

### 1. The FVRA's Anti-Ratification Provision

The FVRA precludes ratification of certain actions by invalidly designated acting officers. Specifically, the FVRA provides that an action taken by any person serving in violation of the FVRA (here, allegedly Mr. Whitaker) "in the performance of any function or duty of a vacant office . . . shall have no force or effect" and "may not be ratified." 5 U.S.C. § 3348(d)(1)-(2). The FVRA narrowly defines a "function or duty" as one that is: (1) "established by statute" and "required by statute to be performed by the applicable officer (and only that officer)," or (2) "established by regulation" and "required by such regulation to be performed by the applicable officer (and only that officer)" and the applicable regulation is "in effect at any time during the 180-day period preceding the date on which the vacancy occurred." *Id.* § 3348(a)(2)(A)-(B).

The National Firearms Act and the Gun Control Act are the underlying statutes at issue here. The National Firearms Act regulates firearms, including machine guns. *See* 26 U.S.C. § 5845. The Attorney General is charged with the "administration and enforcement" of the National Firearms Act. 26 U.S.C. § 7801(a)(1), (a)(2)(A). The National Firearms Act provides that the Attorney General "shall prescribe all needful rules and regulations for the enforcement" of the law. *Id.* § 7805; *see id.* § 7801(a)(2)(A). The Gun Control Act imposes a regulatory licensing scheme and criminal prohibitions on specified firearms transactions. 18 U.S.C. § 921 *et seq.* It incorporates the definition of machine gun that is set forth in the National Firearms Act. *See* 18

---

[10] This argument was first raised in Plaintiff's Reply in Support of his Motion for Summary Judgment as to the Second Amended Complaint. (ECF No. 61, at 10.)

U.S.C. § 921(a)(23). The Gun Control Act delegates administrative and rulemaking authority to the Attorney General to "prescribe only such rules and regulations as are necessary to carry out" the law. *Id*. § 926(a).

Plaintiff argues that Attorney General Barr's ratification was invalid because Mr. Whitaker's issuance of the Rule was a "function or duty" of the Attorney General that could not be ratified. Plaintiff's argument essentially boils down to this: the FVRA's anti-ratification provision applies here because the relevant statutes—the National Firearms Act and Gun Control Act—vest the duty to promulgate firearms regulations with the Attorney General and the Attorney General alone. (ECF No. 95, at 26 (citing 18 U.S.C. § 926(a); 26 U.S.C. § 7805; 26 U.S.C. § 7801(a)(1), (a)(2)(A)). It is irrelevant to Plaintiff that the Attorney General may have delegated the duty by regulation (28 C.F.R. § 0.130) because Plaintiff argues that the regulatory delegation is not the source of the duty—the statutes are. (*Id.*)

Defendants counter that Attorney General Barr's ratification of the Rule was valid for two reasons. First, they argue that there is no statute or regulation that provides that the issuance of a rule regarding the definition of a "machinegun" under the National Firearms Act is an action that can be done *only* by the Attorney General. (ECF No. 89, at 19.) To the contrary, the Deputy Attorney General is statutorily authorized to exercise all duties of the office of the Attorney General in the case of an absence or disability, *e.g.*, when the Attorney General plainly remains in office but is unavailable to act. (*See id.* (citing 28 U.S.C. § 508(a)).) Second, Defendants contend that the FVRA's definition of "function or duty" applies "only to non-delegable functions that are made exclusive to a particular office by statute or regulation." (*Id.*) In other words, if a "function or duty" is lawfully delegable, the statute or regulation creating that function or duty necessarily does not "require" it to be performed only by the vacant office, which in turn means that the anti-

ratification provision is inapplicable. (*Id.* at 20.) And here, the authority to promulgate regulations governing firearms under the National Firearms Act is delegable to officers other than the Attorney General, and in fact, has been delegated to the Director of the ATF. (*Id.* at 20–21 (citing 28 U.S.C. § 510; 28 C.F.R. § 0.130; *Organization of the Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 68 Fed. Reg. 4923 (Jan. 31, 2003)).)

The central disagreement that the parties debate in their briefs is whether the FVRA's definition of "function or duty" applies only to nondelegable duties. Both Plaintiff and Defendants offer textual and legislative history arguments to support their positions. They also dispute the significance of non-binding cases to this question. *See Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), *and cert. denied*, 140 S. Ct. 789; *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), *judgment entered*, No. 19-2676, 2020 WL 1905063 (D.D.C. Apr. 16, 2020), *appeal dismissed*, No. 20-5141, 2020 WL 5358686 (D.C. Cir. Aug. 25, 2020).

The Court agrees with Defendants' suggested interpretation of the FVRA's prohibition on ratification. In reaching this conclusion, the Court begins with the text of the provision. As relevant here, a "function or duty," as defined by the FVRA, is limited to functions or duties established by statute and "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). The duty to issue firearms regulations, such as a rule regarding the definition of a machine gun, is established by statute. *See* 18 U.S.C. § 926(a); 26 U.S.C. §§ 7805, 7801(a)(2)(A); *see also* 83 Fed. Reg. 66527 (citing the aforementioned statutes). The relevant statutes charge the Attorney General with prescribing rules and regulations to carry out or enforce the National Firearms Act and the Gun Control Act. *See id.* But such a prescription does not in turn mean that the duty is "required by statute to be performed" by the Attorney General alone, as

Plaintiff contends. The natural reading of the FVRA's definition of "function or duty" is that it only applies to nondelegable functions made exclusive to the specific office by a statute (or by a regulation so long as the applicable regulation was in effect at any time during the 180-day period preceding the vacancy). The FVRA provides that the statute must "require" the function or duty to be performed "only" by the applicable officer. That a function or duty is lawfully delegable necessarily means that the source of that function or duty, whether statute or regulation, does *not* "require" the action to be performed "only" by the applicable officer.

And while not controlling, the Senate Committee Report accompanying the FVRA bill supports this reading. *See* S. Rep. No. 105-250, at 18 (1998) (providing that functions or duties are defined as "non-delegable" functions or duties of the officer); *see also id.* at 31 ("We must be clear that the non-delegable duties we intend to have performed only by the agency head . . . are only those expressly vested by law or regulation exclusively in the vacant position.").

Other courts have reached a similar conclusion, or at least suggested that this is the proper interpretation. As both parties recognize, the D.C. Circuit endorsed this reading in the context of the exact statutes at issue here, albeit in *dicta*. *See Guedes*, 920 F.3d at 12 (stating in a parenthetical that the provision "only prohibit[s] the ratification of nondelegable duties"). Defendants also cite other cases that support this understanding. (*See* ECF No. 89, at 20 (citing *United States v. Harris Cty.*, No. 16-2331, 2017 WL 7692396, at *3 n.5 (S.D. Tex. Apr. 26, 2017) (finding that the FVRA's prohibition on ratification does not apply to delegable duties); Order at 4–5, *United States v. Vill. of Tinley Park*, No. 16-10848 (N.D. Ill. July 17, 2017) (ECF No. 55) (concluding that "function or duty" does not include a delegable duty that could be performed by another officer and that § 3348(a) "clearly limits" the definition to nondelegable "functions or duties").) *See also Stand Up for California! v. United States Dep't of the Interior*, No. 19-5285, 2021 WL 1437196,

at *3 (D.C. Cir. Apr. 16, 2021) (recognizing that a "function or duty" under the FVRA is one that is made "exclusive" to the office by statute or regulation and making such determination by assessing whether redelegation is permitted); *Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 58–60 (D.D.C. 2020) (holding that ratification was not prohibited where officer delegated her authority in accordance with a statute authorizing officer to delegate any of her statutorily assigned functions), *appeal dismissed*, No. 20-5369, 2021 WL 161666 (D.C. Cir. Jan. 12, 2021); Order at 2, *United States v. Broussard*, No. 16-36 (W.D. La. Mar. 13, 2017) (ECF No. 20) (finding that the FVRA prohibition on ratification applies to the performance of nondelegable functions or duties).

With that in mind, the underlying statutes here do not make the relevant rulemaking exclusive to the person holding the office of the Attorney General alone. Congress can "make clear that a function or duty is exclusive . . . through clear statutory mandates." *Stand Up for California!*, 2021 WL 1437196, at *3; *see, e.g.*, 25 U.S.C. § 3407(a) (directing "exclusive authority" to an officer); 42 U.S.C. § 14952 (expressly prohibiting an officer from delegating authority). Alternatively, a statute may "evince[] a congressional desire to render a function or duty exclusive and non-redelegable." *See id.* But no such statute (or regulation) exists here. To the contrary, there is a statute, entitled "[d]elegation of authority," that expressly authorizes "any other officer, employee, or agency of the Department of Justice" to perform "any function of the Attorney General." 28 U.S.C. § 510. Furthermore, the Attorney General has long delegated authority to issue firearms regulations to the Director of the ATF. *See* 28 C.F.R. § 0.130; 68 Fed. Reg. 4923. The Deputy Attorney General is also statutorily authorized to perform "all the duties" of the Attorney General in the event of an absence or disability, *e.g.*, even when the office of the Attorney General remains filled. *See* 28 U.S.C. § 508(a).

Plaintiff in fact concedes that the duties here are "entirely delegable" to officers other than the Attorney General. (ECF No. 95, at 26, 28.) To Plaintiff, however, what matters under the FVRA is instead whether the duties or functions were assigned to a single officer. (*Id.* at 28–29.) Under Plaintiff's reasoning, the duties here are nonetheless "required by statute" to be performed "only" by the Attorney General despite the clear delegation of authority, because the statute refers by title only to the Attorney General. (*Id.* at 27.) Plaintiff asserts that the text of the FVRA's statutory provision supports this reading because the word "nondelegable" does not appear in the statute. (*Id.* at 26.)

Plaintiff principally finds what he identifies as caselaw support for this position in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020). That court's rationale helps Plaintiff's interpretation, but the case is not precisely on point. There, the court reached a "narrow" holding that where a statute assigns a function to a single Senate-confirmed office *and* where the department head did not reassign that function using his vesting-and-delegation authority or any other authority at least 180 days before the vacancy occurred, that function is a "function or duty" of the vacant office within the meaning of § 3348. *Id.* at 34. Plaintiff urges the Court to look to *L.M.-M*'s reasoning but also stresses that the 180-day lookback provision is irrelevant in this case because the source of the duty here is statutory, not regulatory. But *L.M.-M*'s holding turned on the fact that delegable duties were not delegated before the 180-day window preceding the vacancy. *See id.*; *see also Nw. Immigrant Rts. Project*, 496 F. Supp. 3d at 59 (distinguishing case from *L.M.-M* and describing the *L.M.-M.* court's interpretation of the FVRA's definition of "function or duty" as encompassing delegable duties only so far as the duties were not delegated during the 180-day window preceding the vacancy). Plus, in a later case, the same court rejected an argument similar to the one that Plaintiff makes now. *See Nw. Immigrant Rts. Project*, 496 F.

Supp. 3d at 60 ("Plaintiffs contend that the Secretary's authority to issue final rules is established by statute and required by statute to be performed by the Secretary and only the Secretary. But [a statutory provision] . . . authorizes the Secretary to delegate any of her statutorily assigned functions . . . Plaintiffs fail to cite to any provision that precludes delegation of authority to approve a final rule. The Court, accordingly, concludes that . . . the FVRA does not mandate that the [rulemaking has] 'no force or effect.'"). The Court therefore does not find *L.M.-M.*'s proffered rationale persuasive, at least in the circumstances here.

In short, the authority to promulgate relevant regulations is not exclusive to the Attorney General and is delegable by statute to officers other than the Attorney General. Such authority has long been delegated to the Director of the ATF. Because issuance of the Rule was not an action that was required to be performed by the Attorney General and the Attorney General only, the FVRA's prohibition on ratification does not apply. The Court thus concludes that Attorney General Barr validly ratified the Rule.

### 2.  Voluntary Cessation Doctrine

But Plaintiff argues that even if the Rule was validly ratified, the Court can still reach the merits of Mr. Whitaker's designation under the voluntary cessation exception to mootness. (ECF No. 95, at 10, 29–32.) For their part, Defendants argue that "mootness has no relevance here." (ECF No. 89, at 22.) And even if mootness were at issue, they say that the voluntary cessation exception would not apply because there is no evidence of strategic manipulation of the Court's jurisdiction and no non-conjectural basis to believe the violation complained of would recur. (*Id.*)

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). The voluntary cessation exception

recognizes that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Otherwise, a defendant could "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 568 U.S. at 91. A defendant's voluntary cessation of challenged conduct therefore moots a case if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (citation omitted).

The Court is persuaded, however, that ratification does not moot a claim, but instead resolves the claim on the merits. Accordingly, the voluntary cessation exception to the mootness doctrine is not relevant here. *See Guedes*, 920 F.3d at 13. As the D.C. Circuit explained in *Guedes*, "a properly appointed official's ratification of an allegedly improper official's prior action, rather than mooting a claim, resolves the claim on the merits by 'remedy[ing] [the] defect' (if any) from the initial appointment. This is so regardless of whether 'the previous [officer] was' or was not 'validly appointed under either the Vacancies Act or the Appointments Clause.'" *Id.* (citations omitted).

Plaintiff sidesteps this part of the D.C. Circuit's *Guedes* opinion and argues that ratification is "*never* a basis to avoid deciding a challenge under the Appointments Clause." (*See* ECF No. 95, at 31.) Plaintiff contends that this case is "very different" from other cases with Appointments Clause claims because the Government here did not wait for a judicial determination about the lawfulness of Mr. Whitaker's designation. (ECF No. 95, at 32.) Instead, as Plaintiff describes it, Attorney General Barr ratified the Rule "as a *pre-emptive* attempt to scuttle a challenge to Whitaker's appointment." (*Id.*)

But this argument is unavailing. First, *Guedes* involved the very circumstances present here. To be sure, *Guedes* arose at a different procedural posture and the plaintiff there conceded that Attorney General Barr's ratification was valid. But those factors did not affect the D.C. Circuit's rejection of the asserted voluntary cessation doctrine on the grounds that "ratification is generally treated as a disposition on the legal merits of the appointments challenge." *Guedes*, 920 F.3d at 12; *see also id.* at 13–14 (distinguishing the "narrow exception" set forth in *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000)). And even though Plaintiff in this case challenged Attorney General Barr's authority to act, that distinction proves inconsequential because, as discussed above, the Court concludes that Attorney General Barr's ratification was valid. Plaintiff attempts to downplay the D.C. Circuit's mootness decision as "musings in *dicta*," (ECF No. 95, at 30), but that characterization only applies (if at all) to the court's later discussion of the voluntary cessation doctrine if it were to adopt the analytical approach that ratification moots a claim rather than resolves it—an approach that the court rejected.[11] *Id.* at 14–17.

Second, as Defendants note, there are in fact other instances in which an official properly ratified an action before the validity of the appointment was adjudicated. *See CFPB v. Gordon*, 819 F.3d 1179, 1185–86, 1190–91 (9th Cir. 2016); *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 182 (D.D.C. 2016); *see also Jooce v. Food & Drug Admin.*, 981 F.3d 26, 28 (D.C. Cir. 2020).

 The plaintiffs in *Jooce* offered similar (ultimately unsuccessful) arguments to the ones Plaintiff presents here. In that case, an FDA official (specifically, the FDA's Assistant Commissioner for Policy) promulgated a rule regulating electronic cigarettes. *Jooce v. Food & Drug Admin.*, No. 18-1615, 2020 WL 680143, at *2 (D.D.C. Feb. 11, 2020), *aff'd*, 981 F.3d 26

---

[11] And in any event, this Court would be reluctant to describe the decisional methodology of the Court of Appeals for the District of Columbia Circuit as "musings."

(D.C. Cir. 2020). After the e-cigarette rule was issued, it was ratified by two Senate-confirmed FDA Commissioners. *Id.* E-cigarette manufacturers and retailers challenged the rule in part under the Appointments Clause. *Id.* at *3. Besides arguing that the issuance of the rule was invalid, the plaintiffs challenged the ratification of the rule and contended that the Appointments Clause challenge should survive even if the ratification were effective. On the latter point, their theory was that proper ratification would have mooted the case, but the voluntary cessation exception to mootness applied. *Id.* at *7. The plaintiffs acknowledged the principle that ratification generally resolves Appointments Clause claims on the merits but tried to distinguish their circumstances by highlighting that most other such cases "involved defenses to enforcement actions as opposed to independent, pre-enforcement challenges." *Id.* Citing *Guedes*, the D.C. District Court rejected this line of reasoning. The court explained that such a distinction did not warrant a rejection of the "well-established principle" that ratification is a decision on the merits. *Id.* As a result, ratification did not moot the case even in those circumstances but instead resolved it on the merits. *Id.* The D.C. Circuit affirmed this rationale. *Jooce*, 981 F.3d at 30.

Plaintiff's theory here is analogous, and it likewise fails. Though none of these cases are binding on this Court, the Court still finds them persuasive for the reasons set forth above.

But even if ratification were treated as mooting the claims here, the voluntary cessation doctrine would not apply to restore their vitality. The purpose of this mootness exception is "to prevent defendants from 'forever . . . avoid[ing] judicial review simply by ceasing the challenged practice, only to resume it after the case [is] dismissed.'" *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007) (citation omitted). In this case, the supposed "cessation" is the ratification of the Rule, an action that first required the President's nomination of Mr. Barr and then the Senate's confirmation of him. As a result, as the D.C. Circuit discussed in *Guedes*, the named defendants—

which do not include the President or the Senate—"lacked the unilateral power, or the power at all, to voluntarily cease and restart the conduct complained of" and "[w]ithout such power, the risk of manipulating the litigation process evaporates." *Guedes*, 920 F.3d at 16.

Plaintiff asks the Court to disregard as "demonstrably wrong" the *Guedes* court's reasoning on this point because he argues the Supreme Court does not separate the actions of named defendants from non-defendants in suits against government bodies. (ECF No. 95, at 30–31.) Instead, Plaintiff contends that the question is "always" whether the challenged conduct of the government could recur. (*Id.*) Not so, say Defendants. In fact, Defendants point to a Third Circuit case in which the court distinguished between party and non-party governmental entities in the context of the voluntary cessation doctrine. *See Rendell*, 484 F.3d at 243. In that case, the Third Circuit highlighted that the only named defendant was the Secretary of Defense and "he [had] not voluntarily ceased anything." *Id.* The court decided that the "the voluntary-cessation doctrine simply [did] not apply" because it was a Commission, the President, and Congress—all non-parties—who had been the entities involved in cessation. *Id.* The Court applies the same reasoning here and determines that the voluntary cessation exception is not relevant.

Plaintiff's reliance on *Demery v. Arpaio* is also misplaced. *See* 378 F.3d 1020 (9th Cir. 2004). There, the immediate cause of the defendant's cessation was "not in the short term voluntary" because it was initiated by a third party, not the defendant. *Id.* at 1025–26. Even so, the court found that the exception applied because there was a "sufficient likelihood" that the defendant's alleged wrongdoing would recur. *Id.* Here, there is no such plausible likelihood. Even though mootness allows for consideration of some amount of speculation as to the recurrence of alleged wrongdoing, *see Laidlaw*, 528 U.S. at 190, the possibility of such recurrence remains too conjectural here for the voluntary cessation doctrine to apply. Plaintiff's theory requires too much

speculation about rules not yet promulgated by an official who may or may not yet be in office and that may or may not pose the alleged constitutional concerns that Plaintiff says exist in this case.

Because ratification did not moot the claims challenging the Rule but instead resolved them on the merits, the Court concludes that the voluntary cessation doctrine is inapplicable here. Further, even if ratification did moot the claims, the voluntary cessation exception would still not help Plaintiff. The Court therefore will not reach the merits of Mr. Whitaker's designation.

## IV.   CONCLUSION

For the reasons stated, the Court will grant Defendants' Motion to Dismiss at ECF No. 88. Because the Court determines that Plaintiff lacks standing to pursue his alleged FVRA-policy claims, the Court dismisses those claims without prejudice. *See Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." (citing *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980))). However, the Court notes that counsel for Plaintiff was well aware of Article III standing issues when the Third Amended Complaint was filed in April 2020. By that time, three other district courts across the country had already dismissed similar alleged FVRA-policy claims for lack of standing. The Court thus draws the reasonable conclusion that if Plaintiff could, in good faith, plead facts that would support Article III standing, he would have done so by now. He has not. Accordingly, this Court concludes that amendment of these claims would be futile. As a result, the Court will dismiss the alleged FVRA-policy claims without prejudice but without leave to amend as to those matters.

Plaintiff's other claims are dismissed with prejudice. The Court has granted Plaintiff multiple opportunities to amend his Complaint. The Third Amended Complaint is his fourth attempt to state a claim. The Court believes that it can and should conclude that Plaintiff has at this point put all that he has to work with before the Court, especially when his prior filings were challenged, revised by amendment, and then ventilated by all counsel in oral argument on the challenges to the Second Amended Complaint, and leave to file the Third Amended Complaint was sought and granted at the end of that argument. Any further amendment would be futile.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:          June 1, 2021
cc:             All counsel of record